FREEBORN & PETERS, Plaintiff-Appellee, v. PROFESSIONAL SEMINARS ASSOCIATES, INC., Defendant-Appellant.

First District (1st Division)   No. 87—3271

Opinion filed July 18, 1988.—Rehearing denied December 6, 1988.

Holland C. Capper, of Chicago, for appellant.

Freeborn & Peters, of Chicago (Elizabeth D. Sharp and Spencer Weber Waller, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

The plaintiff, Freeborn & Peters (F&P), an Illinois partnership and law firm, filed a four-count complaint against the defendant, Professional Seminars Associates, Inc. (PSA), a New Jersey corporation, in the circuit court of Cook County for damages allegedly sustained when PSA failed to compensate F&P for preparing materials and presenting a seminar for PSA. PSA filed a motion to dismiss F&P's complaint and the trial court granted the motion as to two counts, denied it as to the other two counts, and granted F&P leave to amend its complaint. When PSA failed to answer the remaining counts, the trial court found PSA to be in default for failure to file its answer and, later on prove up, entered judgment for F&P in the amount of $35,370.89 on F&P's *quantum meruit* count of its complaint. Subsequently, PSA's motion to vacate the default was denied, and it now appeals the denial of its motion to vacate the default.

F&P's four-count complaint against PSA alleged that on or about June 27, 1985, PSA and F&P orally agreed that four of F&P's attorneys, three partners and one associate, would prepare and present a three-day seminar in Chicago entitled, "The Personnel Executive and the Law." F&P alleged, and PSA agreed, that the honorarium fee was to be $1,500. F&P further alleged that PSA had agreed to reimburse F&P for any costs and expenses relating to preparation. PSA disagreed and this was the basis of the dispute between the parties.

In count I, F&P sued PSA for *quantum meruit,* claiming that the reasonable value of its services was the billable time of its attorneys and clerks in preparing the seminar and that these services amounted to $35,370.89. In count II, F&P sued PSA for breach of the oral contract in the amount of $4,036.89, which was the total of the $1,500 fee plus costs and expenses advanced by F&P. Counts III and IV were based upon fraudulent and negligent misrepresentation concerning PSA's alleged lack of intent to compensate F&P and its alleged misrepresentation as to the number of attendees for the proposed seminar.

As noted earlier, PSA filed a motion to dismiss in lieu of its answer, and on October 8, 1986, the trial court granted PSA's motion as to counts III and IV, allowed F&P 28 days to replead counts III and IV, and granted PSA 28 days thereafter to answer the amended complaint. PSA's motion to dismiss counts I and II was denied. F&P had asked the court to default PSA, but the court denied this motion because, the court ruled, PSA had properly filed its motion to dismiss in lieu of an answer. Subsequently, F&P filed another motion for default, and on February 25, 1987, the court granted F&P's mo-

tion and found PSA to be in default for failure to answer the original counts I and II. The court also allowed PSA's attorney leave to withdraw, and, in compliance with Supreme Court Rule 13(c) (107 Ill. 2d R. 13(c)), continued the matter for 21 days for PSA to retain new counsel.

The case was set for prove up 22 days later, on March 19, 1987, and at that time, apparently based upon time sheets and expense records of F&P, the court entered judgment for F&P in the amount of $35,370.89 on its *quantum meruit* count. The record before this court does not include a transcript of the proceedings on March 19, 1987, at which F&P proved up its claim. The record presented merely contains an order that a judgment was entered in the amount of $35,370.89. The only other evidence in the record to support the judgment amount is certain unverified documents attached to PSA's motion to vacate the default judgment which support PSA's assertion that the time sheets were the basis of the court's judgment. These documents appear to be merely a typed list of F&P's billed time and do not contain a total figure or any description of how the time was spent.

On April 30, 1987, PSA, represented by new counsel, filed a motion to vacate the default judgment pursuant to section 2—1301 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1301). The motion was supported by the affidavit of PSA's president, Joseph Masterson, and outlined the communication problems with PSA's initial counsel, and also acknowledged receipt of the notices of the motions to withdraw and the motion for default. In conclusion, Masterson's affidavit asserted that the judgment had been improperly entered against PSA.

Subsequently, on May 28, 1987, PSA's newly retained attorneys were granted leave to withdraw as counsel; again, apparently due to lack of communication between the attorneys and PSA. That same day, another affidavit was filed by PSA's president, Masterson, stating that the PSA fee to F&P was agreed to be $1,500, that F&P told PSA it was preparing its own materials, and that PSA understood that it could use those materials afterwards. The affidavit further stated that when F&P sent PSA a bill for $1,500 plus $2,536.89 for materials, PSA told F&P it would pay the $1,500, upon receipt of a corrected bill, which PSA never received. F&P responded that it was to be provided with materials by PSA and that it never received any materials from PSA until the day before the seminar, and that those materials were inadequate.

PSA thereafter again obtained new counsel, and on September

15, 1987, the trial court denied PSA's motion to vacate the default judgment entered on March 19, 1987, as well as PSA's motion for a remittitur to reduce the judgment amount to $1,500. PSA has now appealed these orders which denied its motion to vacate the default judgment for $35,370.89 and denied its motion for a remittitur of the judgment amount to $1,500.

PSA raises two issues on appeal: (1) whether the trial court erred in entering a default order against PSA even though (a) PSA had filed a motion to dismiss which was granted as to counts III and IV, and F&P had failed to file its amended counts III and IV at the time of the default motion, and (b) PSA was not represented by counsel at the time of the entry of the default order; and (2) whether the trial court erred when it entered a default judgment for F&P in the amount of $35,370.89 under F&P's *quantum meruit* count, although the amount of the express contract fee was indisputedly $1,500 and F&P had improperly attempted to allege an additional $2,536.89 in costs and expenses under its breach of contract count.

■■ ■ The first issue raised by PSA is whether the trial court erred when it entered a default order against PSA, although counts III and IV were dismissed on PSA's motion, and PSA was not represented by counsel at the time that the default motion was granted. Section 2—1301 of the Code of Civil Procedure sets forth the requirements for a court's entry of a default judgment. That section provides that a default judgment "may be entered for want of an appearance, or for failure to plead" and that the entry of a default judgment is discretionary with the court. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1301(d).) Furthermore, a court may set aside a final default judgment on motion within 30 days upon any reasonable terms and conditions. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1301(e).) Our court has previously described the considerations a trial court should take into account when deciding a motion to vacate:

> " 'The question of whether or not a court should set aside a default should be so resolved as to do substantial justice between the parties with the idea in mind of carrying out, insofar as it is possible, the determination of matters upon their merits. *** The entering of a default is one of the most drastic actions a court may take to punish for disobedience of its commands. *The court has other powers which are ample in most instances.* In our judgment, a default should only be condoned when, as a last resort, it is necessary to give the plaintiff his just demand. It should be set aside when it will not cause a hardship upon the plaintiff to go to trial on the merits.

(Emphasis added.)' " *Braglia v. Cephus* (1986), 146 Ill. App. 3d 241, 245, 496 N.E.2d 1171, 1173, *appeal denied* (1986), 113 Ill. 2d 558, quoting *Widicus v. Southwestern Electric Cooperative, Inc.* (1960), 26 Ill. App. 2d 102, 108-09, 167 N.E.2d 799, 803, *appeal dismissed* (1960), 19 Ill. 2d 626.

PSA alleges that substantial injustice occurred because the order of October 8, 1986, dismissed counts III and IV of F&P's complaint and directed F&P to file an amended complaint, and did not direct PSA to answer the original counts I and II, but only directed PSA to answer the amended complaint. Additionally, PSA argues that substantial injustice occurred when the default order was entered on the same day that its counsel withdrew. F&P, on the other hand, argues that the default was properly entered against PSA here because F&P was granted "leave to file" the amended counts, and it could, as it did, choose not to file those amended counts. Therefore, F&P claims, PSA had no reason to believe it did not have to answer the original counts I and II. F&P also contends that PSA has not asserted any meritorious defenses to the claim and that it would be unreasonable to now require F&P to go to trial on the merits.

■ It is clear that the trial court abused its discretion by defaulting PSA for failure to answer counts I and II, when the trial court's order of October 8, 1986, did not specifically direct PSA to answer counts I and II. It is the policy of Illinois courts to enter a default only as a last resort because it is one of the most drastic sanctions, and, accordingly, PSA should have been allowed the opportunity to respond to counts I and II. (See *Wollschlager v. Sundstrand Corp.* (1986), 143 Ill. App. 3d 347, 493 N.E.2d 107.) In this situation, there were no clear acts or failures to act by PSA to support the court's entry of the drastic sanction of a default judgment against it and, thus, the court's later refusal to vacate the default was also improper. Moreover, it was manifestly unfair for the trial court to enter the default order on the same date that PSA's attorney withdrew. Accordingly, we find that the trial court abused its discretion by entering the default order that same day.

■ We also note that PSA did not act with substantial delay in retaining new counsel or in filing its motion to vacate the default. Additionally, since the date for prove up was set approximately 22 days after the default order was entered and, under Supreme Court Rule 13(c), a party is allowed 21 days to retain new counsel, substantial injustice was done to PSA by the entry of default on the same date that PSA's attorney was granted leave to withdraw, and also by the subsequent scheduling of the case for prove up 22 days later.

PSA's motion to vacate was properly filed as required by section 2—1301(e) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1301(e)), and after the motion to vacate was filed, PSA filed two affidavits by its president, Mr. Masterson, in which Masterson stated both the reason for PSA's failure to timely answer the complaint, *i.e.,* lack of communication with its attorneys, and PSA's defenses to F&P's allegations in the complaint based on what PSA asserted was F&P's misinterpretation of the express terms of the contract. The two affidavits by Masterson, we believe, provided a meritorious and valid basis for vacating the default judgment. The order of September 15, 1987, which denied PSA's motion to vacate the default must, consequently, be reversed, and the default against PSA must be vacated, since, as noted, a substantial injustice was done to PSA and F&P has not shown how it would be prejudiced by requiring this case to proceed on its merits.

Since we have determined that the default order must be vacated and the cause remanded for trial, we find that the second issue raised by PSA concerning whether the trial court properly entered judgment in an amount of $35,370.89 need not be addressed. However, we observe, as noted previously, that the entry of the judgment in the amount of $35,370.89 does not have any support in the record, and there also does not appear to be any basis for a *quantum meruit* award of such amount under the allegations in F&P's complaint. In fact, F&P admitted that a contract existed; it only disputed whether the terms included a fee plus a payment of costs and expenses. Further, F&P initially asked to be awarded only the fee plus costs and expenses, and it was not until PSA refused to pay the claimed costs and expenses that F&P attempted to make a quasi-contract claim for $35,370.89, which it asserted was the reasonable value of its services. It is well settled that a plaintiff cannot claim there is a contract, and, at the same time, claim there is no contract. (See *Board of Directors of Carriage Way Property Owners Association v. Western National Bank* (1985), 139 Ill. App. 3d 542, 487 N.E.2d 974.) Thus, it was inconsistent to assert that the entire value of the contract was $4,036.89 and to also claim that the reasonable value of the services was $35,370.89 on the basis of *quantum meruit.* As the record now stands, these are inherent inconsistencies in F&P's assertions.

Accordingly, for all the reasons set forth above, the order of September 15, 1987, which defaulted PSA is vacated, and PSA is hereby directed to answer the remaining counts I and II of F&P's complaint within 28 days of the case being reinstated in the trial court. There-

after, it is directed that the case proceed to trial on the merits of the claim.

Vacated and remanded with directions.

CAMPBELL, P.J., and O'CONNOR, J., concur.