MARTA VALDOVINOS, as Parent, Guardian, and Next Friend of Daniel Valdovinos, a Disabled Minor, *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. LUNA-MANALAC MEDICAL CENTER, LTD., d/b/a Antillas Family Health Center, *et al.*, Defendant-Appellants and Cross-Appellees.

First District (4th Division)    Nos. 1—97—3961, 1—97—3969, 1—97—4337, 1—97—4533, 1—97—4649 cons.

Opinion filed September 2, 1999.

Pretzel & Stouffer, (Edward B. Ruff III, Robert Marc Chemers, and Scott Howie, of counsel), and Cassiday, Schade & Gloor (John Cassiday, Martha Pagliari, and Jennifer Keller, of counsel), both of Chicago, for appellants.

Stackler & Holstein, of Chicago (Barbara Stackler, Robert Holstein, and Thomas Zimmerman, Jr., of counsel), for appellees.

JUSTICE HOFFMAN delivered the opinion of the court:

This action commenced on June 6, 1991, and was dismissed voluntarily pursuant to section 2—1009 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1009 (West 1996)) on September 26, 1997. The trial court's order dismissing the cause on that date and the proceedings that followed prompted the parties to file some seven notices of appeal and cross-appeal. However, for the reasons that will follow, we lack jurisdiction to consider these consolidated appeals.

The following is a recitation of so much of the procedural history of this case as is necessary to an understanding of our disposition of the matter.

This action was originally filed as a medical negligence action on behalf of Daniel Valdovinos, a disabled minor, by Marta Valdovinos, his parent and next friend. It proceeded on with Marta Valdovinos acting as the sole plaintiff in her representative capacity until the filing of a seventh amended complaint. On July 2, 1997, the trial court entered an order permitting the filing of a seventh amended complaint. That complaint, when filed, listed not only Marta Valdovinos as a plaintiff in her representative capacity, but also the Chicago Trust Company, as guardian of the estate of Daniel Valdovinos, a disabled minor. When used hereinafter, the term "plaintiffs" refers to both Marta Valdovinos and the Chicago Trust Company in their respective representative capacities. The seventh amended complaint consisted of medical negligence claims against Julietta Luna Joson, M.D. (Joson), and Luna-Manalac Medical Center, Ltd. (Luna), and a product liability claim against Parke, Davis & Company (Parke Davis).

Although the case was assigned to a trial judge on August 18, 1997, it was still subject to extensive motion practice, including a motion to strike and dismiss, a motion for judgment on the pleadings, multiple motions in limine, a motion to bar certain evidence, and four motions for a substitution of judge.

On September 25, 1997, an oral motion to voluntarily dismiss the action was made by plaintiffs' attorney during the course of a hearing on various motions in limine. The defendants objected and were granted an opportunity to respond. Although the motion is not contained in the record, it appears that later that same day Parke Davis filed a motion for summary judgment without leave of court (see Cook Co. Cir. Ct. R. 2.1(f) (eff. April 23, 1992)), apparently in an effort to secure a "with prejudice" dismissal of the action before the plaintiffs were permitted to voluntarily dismiss the case "without prejudice." See Gibellina v. Handley, 127 Ill. 2d 122, 535 N.E.2d 858 (1989). Also on September 25, 1997, after the proceedings before the trial court had concluded, the plaintiffs filed a pleading styled

"Plaintiffs' Revised Motion for a Voluntary Dismissal Without Prejudice."

On September 26, 1997, Joson and Luna filed their motion to join in Park Davis's motion for summary judgment. When the matter was heard on September 26, the court granted the revised motion for a voluntary dismissal pursuant to section 2—1009 of the Code, declining to first rule on Parke Davis's motion for summary judgment. The order granting the voluntary dismissal also provided that "the plaintiff is ordered to pay all costs associated with this case including the costs incurred by the defendants in the taking of depositions and those other costs as provided for in *Galowich v. Beech Aircraft Corp.*, 93 Ill. App. 3d 690, *rev'd on other grounds*, 92 Ill. 2d 157 (1981)." The order did not determine the amount of costs to be paid or specify which of the plaintiffs was to make the payment; the preamble of the order, though, states that the matter was "HEARD on the motion of the plaintiff, MARTA VALDOVINOS."

On October 21, 1997, apparently in response to motions filed by the defendants to compel the payment of their costs, the court entered and continued the case to November 10, 1997, requiring the parties to provide briefs "regarding Illinois Supreme Court Rule 219(e)," and entered and continued to the same date the court's "own motion to vacate the order granting plaintiff's [*sic*] motion to voluntarily dismiss the case." That same order provides that "[t]he court declines to rule on any motion for attorneys fees other than those fees incurred on or subsequent to September 26, 1997, in regards to costs for voluntary dismissal." This particular paragraph of the order was amended on October 22, 1997, to read:

"The Court declines to rule on any motions for attorneys' fees for those fees incurred before the case was assigned to this court. Fees incurred after assignment will be taken into consideration only in regards to costs for voluntary dismissal."

On October 24, 1997, Parke Davis filed a notice of appeal (our docket No. 1—97—3969) from the trial court's order of September 26, 1997, granting the plaintiffs' revised motion for a voluntary dismissal. On October 27, 1997, Joson and Luna filed their notice of appeal (our docket No. 1—97—3961) from the trial court's orders of: January 22, 1997, denying their motion for summary judgment; September 11, 1997, denying their renewed motion for summary judgment, partially denying their motion to strike certain of the plaintiffs' supplemental answers to interrogatories, denying certain of their motions *in limine*, and granting certain of the plaintiffs' motions *in limine*; and September 26, 1997, granting the plaintiffs' revised motion for a voluntary dismissal.

On October 27, 1997, Parke Davis filed a brief in support of its petition for costs as required by the trial court's order of October 21. This brief, however, went much further than merely addressing Parke Davis's entitlement to costs under Supreme Court Rule 219(e) (166 Ill. 2d R. 219(e)). It additionally requested that the trial court reconsider its order of September 26, 1997, granting the plaintiffs' motion for a voluntary dismissal.

Also on October 27, 1997, the plaintiffs filed: (1) a motion to vacate the order of September 26, 1997; and (2) a motion seeking an assessment of fees and costs pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). The record is void of any indication that the plaintiffs' Rule 137 motion was ever ruled upon by the trial court. In point of fact, there is no indication that the motion was ever noticed for hearing.

On November 3, 1997, Parke Davis filed a motion seeking, *inter alia*, the imposition of sanctions under Rule 137 on the basis that it had been required to respond to the plaintiffs' motion for sanctions.

On November 6, 1997, a notice of cross-appeal, bearing a caption that lists only Marta Valdovinos in her representative capacity as a party plaintiff, was filed on behalf of the "Plaintiff-Appellee/Cross-Appellant." This notice of cross-appeal seeks review of the trial court's orders of: August 21, 1997, quashing certain deposition subpoenas; September 11, 1997, denying certain of her motions *in limine*, granting certain of the defendants' motions *in limine*, removing all references to Parke Davis's parent, Warner-Lambert, from the caption of the cause, striking certain paragraphs from the plaintiffs' complaint, striking all references in count III of the plaintiffs' complaint to epinephrine products other than those produced by Parke Davis, and striking certain of the plaintiff's supplemental answers to interrogatories and barring her from attempting to elicit testimony based thereon; September 22, 1997, refusing to continue the trial date; September 25, 1997, barring the plaintiff's use of a certain demonstrative video; and September 26, 1997, requiring her to pay the defendants' costs in excess of their filing fees.

On November 12, 1997, the parties appeared before the trial court. At the commencement of those proceedings, the trial judge orally informed the parties:

> "The motion to vacate the *** voluntary dismissal without prejudice is denied. It stands."

The record is unclear, however, whether the motion to vacate that the trial judge denied was the court's "own motion" reflected in its order of October 21, the plaintiffs' motion filed on October 27, Parke Davis's motion to reconsider also filed on October 27, or all of the above. On

that same day, the trial court entered a written "Memorandum and Order," recounting the procedural history of the case, and finding that the "plaintiff" had "abused section 2—1009" and "violated Supreme Court Rule 219(e)." The last three paragraphs of that order read as follows:

> "Further, it is this court's order that if the costs listed in attachment A are not paid by 11:59 p.m. on November 14, 1997, the order of September 26, 1997 will remain in effect, the case will remain dismissed without prejudice and this order will be final and appealable.
>
> ACCORDINGLY, IT IS HEREBY ORDERED that the plaintiff pay the defendants costs and other expenses in the amount of $117,059.41 by 11:59 p.m. on November 14, 1997.
>
> This order is final and appealable."

We note that the order again does not state which plaintiff is required to pay the assessed costs. This observation becomes of some significance a bit later in our recitation of the proceedings before the trial court.

On November 20, 1997, Parke Davis filed a notice of appeal (our docket No. 1—97—4337) from the trial court's orders of: September 26, 1997, granting the plaintiffs' revised motion for a voluntary dismissal; and October 21, 1997, October 22, 1997, and November 12, 1997, "limiting the availability of attorney's fees, denying, in part, this defendant's motion to compel payment of costs, and denying this defendant's motion for attorney's fees."

The $117,059.41 in costs and expenses awarded to the defendants was not paid as ordered. Consequently, on November 26, 1997, the defendants filed a joint motion requesting that the court vacate its September 26, 1997, order granting the plaintiffs' motion for a voluntary dismissal and resume the trial of the cause, or, in the alternative, that it dismiss the case "with prejudice." The trial court denied the motion on December 11, 1997. During the hearing on December 11, the attorney representing Joson and Luna asked the court for clarification as to who was responsible for the payment of the costs awarded on November 12. Specifically, counsel stated:

> "The other question I had, Your Honor, is—so there's no confusion—it appears that when I did contact plaintiff's counsel regarding payment, it was their understanding that the payment was to be made by the attorneys. My understanding from reading the order is it says that the plaintiff pay. And I want to make sure that it is the party that pays."

The court gave the following response:

> "To clarify that, what I meant is that—that I felt that the appellate court or the supplemental proceeding judge determine that is-

sue as to who should pay the amounts of money as court costs and attorneys fees, whether it should be the attorneys or the plaintiff ***[.]

\* \* \*

*** I was assuming that either the probate judge would determine whether or not the cost should be assessed against the attorneys or the plaintiff or the estate.

\* \* \*

That would require almost another hearing I would think to see who *** is at fault. *** That would have to be determined by possibly the appellate court, possibly the probate judge. I think you would—we would need a new hearing and I would think a hearing would have to be done down in the probate court to determine whether those assets—whether those costs should be assessed against the plaintiff, the [e]state, or against the attorneys. I think you need a hearing."

On December 12, 1997, Joson and Luna filed a notice of appeal (our docket No. 1—97—4533) again listing the orders included in their notice of appeal filed on October 27, 1997, and also appealing from the trial court's orders of: November 12, 1997, denying certain of the costs requested by these defendants; and December 11, 1997, denying the defendants' motion to vacate the order of September 26, 1997, by reason of the plaintiffs' failure to pay costs as ordered. On December 29, 1997, Parke Davis filed a notice of appeal (our docket No. 1—97—4649) from the trial court's order of December 11, 1997, denying the defendants' motion to vacate the order of September 26, 1997, granting the plaintiffs' motion to voluntarily dismiss the cause. On January 12, 1998, a notice of cross-appeal was filed, again referencing the orders set forth in the notice of cross-appeal filed on November 6, 1997, and additionally appealing from the trial court's orders of: October 21, 1997, and October 22, 1997, declining to rule on any motion for attorney's fees incurred prior to September 26, 1997; and November 12, 1997, assessing $117,059.41 in costs to be paid to the defendants.

With that procedural backdrop, we will now sort through the notices of appeal and cross-appeal, along with the motions filed by the parties and the trial court's orders, in an effort to determine whether we have jurisdiction to entertain these consolidated appeals.

■ An order granting a plaintiff's motion for a voluntary dismissal is "final and appealable by the defendants" (*Kahle v. John Deere Co.*, 104 Ill. 2d 302, 307, 472 N.E.2d 787 (1984)), and also by the plaintiff to the extent that it assesses costs against her (*Galowich v. Beech Aircraft Corp.*, 92 Ill. 2d 157, 161-62, 441 N.E.2d 318 (1982)). Ignoring for the moment the fact that the trial court's order of September 26,

1997, fails to specify the amount of costs to be paid and which plaintiff is required to pay those costs and assuming for the sake of analysis that the order was final for purposes of appeal, the actions of the parties and the trial court subsequent to the entry of the September 26, 1997, order rendered the notices of appeal and cross-appeal filed by the parties on October 24, 1997, October 27, 1997, and November 6, 1997, of no effect.

█ █ Section 2—1203 of the Code (735 ILCS 5/2—1203 (West 1996)) governs the filing of posttrial motions in cases which are not tried before a jury. That section of the Code grants any party the right, among other things, to file a motion for rehearing, a motion for modification, or a motion to vacate a judgment within 30 days after its entry. Motions to reconsider in cases disposed of prior to submission to a jury also fall within the type of relief available under section 2—1203. See *Berg v. Allied Security, Inc.*, 193 Ill. 2d 186 (1999). In this case, on October 27, 1997, the plaintiffs filed a motion to vacate the order of September 26, 1997, and Parke Davis filed a brief requesting that the court reconsider the order. October 27 is 31 calendar days after September 26. However, since October 26, 1997, fell on a Sunday, that day is excluded from the computation of the 30 days for the filing of a posttrial motion under section 2—1203 of the Code (see 5 ILCS 70/ 1.11 (West 1996)), rendering the plaintiffs' motion to vacate and Parke Davis's request for reconsideration timely posttrial motions.

█ The supreme court in *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 460, 563 N.E.2d 459 (1990), held:

"Supreme Court Rule 303 governs the timing of appeals from final judgments of the circuit court. [Citation.] Subsection (a)(1) of that rule states that a notice of appeal must be filed within 30 days after entry of the final judgment appealed from, or 'if a timely posttrial motion directed against the judgment is filed, *** within 30 days after the entry of the order disposing of the last pending posttrial motion.' [Citation.] Subsection (a)(2) of Rule 303 states that a notice of appeal filed before entry of an order disposing of the last pending post-trial motion has no effect and must be withdrawn by the party who filed it. This is so whether the post-trial motion was filed before or after the notice of appeal. A new notice of appeal must be filed within 30 days after entry of the order disposing of the last pending post-trial motion. [Citation.]"

█ Consequently, the timely filing of the plaintiffs' motion to vacate and Parke Davis's request for reconsideration rendered the notices of appeal and cross-appeal filed on October 24, 1997, October 27, 1997, and November 6, 1997, ineffective since the earliest possible date that it might be said that the trial court disposed of any motion to vacate

or reconsider the order granting the plaintiffs' motion for a voluntary dismissal was on November 12, 1997. Our conclusion that these particular notices of appeal and cross-appeal did not vest us with jurisdiction does not rest entirely upon the filing of the plaintiffs' motion to vacate and Parke Davis's request for reconsideration.

■ Although a Supreme Court Rule 137 motion is not considered a posttrial motion, it is considered to be a claim for relief within the underlying action. *Marsh*, 138 Ill. 2d at 464-68. Absent a Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) finding in an underlying judgment, a Rule 137 motion filed within 30 days after the entry of judgment renders any notice of appeal filed prior to the disposition of such a motion ineffective, without regard to whether the notice of appeal was filed before or after the Rule 137 motion. *Marsh*, 138 Ill. 2d at 468-69.

■ In this case, the plaintiffs filed a timely Rule 137 motion on October 27, 1997, which, to the best of our reading of the record, has never been ruled upon. Since the order of September 26, 1997, does not contain a finding that there is no just reason to delay its enforcement or appeal as required by Rule 304(a), the notices of appeal and cross-appeal filed on October 24, 1997, October 27, 1997, and November 6, 1997, did not vest this court with jurisdiction. We, therefore, dismiss the appeals and cross-appeal docketed in this court as Nos. 1—97—3961 and 1—97—3969.

We turn now to the notices of appeal filed by Parke Davis on November 20, 1997, and December 29, 1997, the notice of appeal filed by Joson and Luna on December 12, 1997, and the notice of cross-appeal filed on January 12, 1998.

■ Subject to certain exceptions not applicable in this case, the jurisdiction of the appellate court is limited to reviewing appeals from final judgments. *In re Marriage of Verdung*, 126 Ill. 2d 542, 553, 535 N.E.2d 818 (1989). As we acknowledged earlier, an order granting a plaintiff's motion for a voluntary dismissal is final and appealable by a defendant and also by the plaintiff to the extent that it assesses costs against her. However, the power of this court to address a defendant's appeal from an order granting a plaintiff's motion for a voluntary dismissal or a plaintiff's appeal from the assessment of costs does not form the jurisdictional basis from which we may also address the substantive merits of other nonfinal orders entered by a trial court prior to the granting of a voluntary dismissal. *Saddle Signs, Inc. v. Adrian*, 272 Ill. App. 3d 132, 135-40, 650 N.E.2d 245 (1995).

As our factual recitation reflects, the notice of appeal filed by Joson and Luna on December 12, 1997, and the notice of cross-appeal filed by the plaintiffs on January 12, 1998, reference a number of

orders entered by the trial court denying motions for summary judgment, granting and denying motions to strike interrogatory answers, quashing deposition subpoenas, striking portions of the plaintiffs' complaint, denying motions to continue the trial date, and granting and denying certain of the parties' motions *in limine*. These orders are all interlocutory in character.

There is little question that an appeal from a final judgment draws into issue all prior interlocutory orders which produced the final judgment. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433, 394 N.E.2d 380 (1979). That is to say, we have jurisdiction to review interlocutory orders of a trial court if those orders constitute a procedural step in the progression leading to the entry of the final judgment from which an appeal has been taken. *Hough v. Kalousek*, 279 Ill. App. 3d 855, 863-64, 665 N.E.2d 433 (1996). When the interlocutory orders of a trial court do not constitute such a procedural step, we have no jurisdiction to review them absent some specific statute or rule granting us the power.

■ None of the interlocutory orders entered by the trial court denying motions for summary judgment, granting and denying motions to strike interrogatory answers, quashing deposition subpoenas, striking portions of the plaintiffs' complaint, denying motions to continue the trial date, and granting and denying certain of the parties' motions *in limine* are a procedural step in granting a motion for a voluntary dismissal or the assessment of costs under Supreme Court Rule 219(e). Consequently, we lack the requisite jurisdiction to review them. See *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341 (1999); *Hough*, 279 Ill. App. 3d at 863-64; *Saddle Signs, Inc.*, 272 Ill. App. 3d at 135-40.

We are left then with the question of whether we have jurisdiction to review the trial court's orders granting the plaintiffs' motion for a voluntary dismissal and assessing costs pursuant to Rule 219(e). As stated earlier, we find no evidence that the plaintiffs' Rule 137 motion has ever been ruled upon. Absent the purported Rule 304(a) finding which appears as the last sentence in the trial court's order of November 12, 1997, we would end our opinion and dismiss the parties remaining appeals as premature. The last sentence of that order, however, requires that our analysis continue.

■ A judgment is final for appeal purposes if it determines the litigation on the merits or some definite part thereof so that, if affirmed, the only thing remaining to be done by the trial court is to proceed with execution on the judgment. *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 171, 429 N.E.2d 483 (1981); *Village of Niles v. Szczesny*, 13 Ill. 2d 45, 48, 147 N.E.2d 371 (1958). An appeal may be taken from a

final judgment which disposes of fewer than all of the claims if the trial court has made an express finding that there is no just reason to delay enforcement or appeal or both. 155 Ill. 2d R. 304(a). Consequently, an appeal may be taken from a final judgment, notwithstanding the fact that a motion for sanctions remains pending and unresolved, if the trial court has made a written finding consistent with the requirements of Supreme Court Rule 304(a). *Marsh*, 138 Ill. 2d at 468. However, the fact that an order contains language stating that it is final and appealable does not make an otherwise nonfinal order either final or appealable. *U.S. Air, Inc. v. Prestige Tours, Inc.*, 159 Ill. App. 3d 150, 154, 512 N.E.2d 68 (1987).

■ Although an order granting a plaintiff's motion for a voluntary dismissal is "final and appealable by the defendants," and also by the plaintiff to the extent that it assesses costs against her, we, nevertheless, believe that such orders must still be capable of enforcement before they can be deemed final for purposes of appeal.

The order of September 26, 1997, granted the plaintiffs' revised motion for a voluntary dismissal and ordered the "plaintiff" to pay the defendants' costs, including unspecified costs incurred in the taking of depositions. However, the order of November 12, 1997, constituted a substantial modification as it assessed costs against the "plaintiff" far in excess of the defendants' statutory costs and their deposition expenses. The first of the above-quoted paragraphs of the trial court's November 12 order appears to make the finality of that order and the continued effectiveness of the order of September 26 granting the plaintiffs' motion for a voluntary dismissal contingent upon the assessed costs of $117,059.41 *not* being paid by 11:59 p.m. on November 14, 1997. As written, the paragraph makes no sense. An award of costs pursuant to Rule 219(e) is appropriate only if a plaintiff is granted a voluntary dismissal, and section 2—1009 of the Code makes the payment of costs a condition precedent to a plaintiff's right to take a voluntary dismissal. Perhaps the court meant to say that if the assessed costs were paid when due the order granting the voluntary dismissal would remain in effect and the assessment of costs would be final. In any case, we fail to see how an order which provides that its finality is dependent upon a future event could be deemed a "final order."

More troubling than the apparent contingency contained in the November 12 order, though, is the fact that, although there are two plaintiffs, both the order of September 26 and the order of November 12 speak in terms of the "plaintiff" (singular) being required to pay the defendants' costs. Based upon the preamble contained in the order of September 26, we might have been able to construe the orders to

mean that Marta Valdovinos was required to pay the assessed costs if it were not for the colloquy which took place in open court on December 11, 1997. It appears from the trial court's response to a defense attorney's request for clarification that the court itself was unsure who was to pay the costs. At one point, the court seemed to suggest that either this court, a judge in a supplementary proceeding, or the probate court should decide who is responsible for paying the defendants' costs pursuant to the order. If the judge that entered the order does not know who is supposed to pay the costs which he assessed, we are at a loss to understand how the order could ever be enforced by execution. An order assessing costs is not a final order unless, if affirmed, the only thing remaining to be done by the trial court is to proceed with execution. In this case, the trial court is still required to determine who it assessed costs against. Until it does so, there is no final order for us to review.

The deficiency in the trial court's order is not purely one of form. Rule 219(e) authorizes the assessment of costs against "the party voluntarily dismissing a claim." 166 Ill. 2d R. 219(e). There is little doubt that, if costs are taxed in this case, we will ultimately be required to determine if such an assessment is warranted under the circumstances and whether the amount assessed is appropriate. However, in the event that the trial court were to assess costs against Marta Valdovinos, personally, we would be required to additionally address the question of whether such an order is permissible under the rule in light of the fact that she is a party to the cause only in her representative capacity. If, on the other hand, the court assessed costs against Marta Valdovinos or Chicago Trust Company in their representative capacities, we would be faced with the question of whether the court appropriately exercised its discretion in taxing costs to be paid from the assets of a disabled minor.

We do not wish to minimize the importance or legitimacy of the issues raised by the parties, at least as they relate to the plaintiffs' right to take a voluntary dismissal and the propriety of assessing costs pursuant to Rule 219(e). However, we are obligated to examine our jurisdiction even if the parties themselves fail to raise the issue (*Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539, 470 N.E.2d 290 (1984)), and to dismiss an appeal when that jurisdiction is lacking. For the reasons stated, we find that no final and appealable order has yet been entered in this case, the purported Rule 304(a) finding in the trial court's order of November 12, 1997, notwithstanding. Accord-

ingly, we also dismiss appeals Nos. 1—97—4337, 1—97—4533, and 1—97—4649 for lack of jurisdiction.

Appeals dismissed; cause remanded.

SOUTH, P.J., and HALL, J., concur.