SIXTH DIVISION
February 22, 2008

No. 1-06-2363

MORTGAGE ELECTRONIC SYSTEMS, )
)
      Plaintiff-Appellee, )    Appeal from the
)    Circuit Court of
v. )    Cook County, Illinois
)
DEBORAH GIPSON, )    No. 05 CH 10946
)
      Defendant-Appellant. )    Honorable
)    Jessie G. Reyes
)    Judge Presiding.
)

      JUSTICE JOSEPH GORDON delivered the opinion of the court:

On September 16, 2005, plaintiff, Mortgage Electronic Systems, as nominee for Fremont Investment and Loan, filed a complaint to foreclose a mortgage executed by defendant, Deborah Gipson. After an unsuccessful initial attempt to serve Gipson, plaintiff obtained an order from the circuit court on September 21, 2005, to appoint a special process server. By affidavit, the special process server attested that on September 29, 2005, he perfected individual service on Gipson by delivering the summons and complaint to her at her residence.

On January 17, 2006, plaintiff filed a motion for default, a motion to appoint a selling officer, and a motion for judgment of foreclosure and order of sale. The circuit court granted these motions the same day they were filed. On May 2, 2006, a judicial sale of the property took place and Third Coast Holders, LLC (Third Coast Holders), was the high bidder.

On May 5, 2006, Gipson filed a motion to quash service of summons, set aside the judgment of foreclosure and deny confirmation of the judicial sale. In her motion, Gipson stated

that she was never served. In support of this contention, Gipson attached an affidavit in which she stated:

"That in or around the time that Plaintiff alleges that I was personally served with process in this cause, a guest of mine, Gwen Tolbert, was visiting my home and was at the home during the day when I was not at home. She did not reside at the subject property and was presumably served with summons in this cause on my behalf.

That the person who handed her documents did not tell her of the contents of the envelop [sic], nor did they inform her that the contents of the envelop [sic] was [sic] relating to a foreclosure of the property in which I was then living and she did not communicate any such information to me.

That I had never been served with summons and complaint in this cause properly notifying me of each of the proceedings relating to the foreclosure of my home.

That after I was unable to temporarily pay my mortgage, I contacted the mortgage company and attempted to reinstate my mortgage and to enter into a workout agreement with the mortgage company.

That the mortgage company failed, and/or refused to send me the necessary documents in order to reinstate my mortgage, or return my calls and inquiries about commencing the process for reinstating my mortgage.

That on or about April 29, 2006 I received a telephone call from a

representative of the Plaintiff who informed me that my property was set to be sold at judicial sale on May 2, 2006 and threatened me to leave the property or pay the Plaintiff all the money I owed on my mortgage. I immediately contacted attorney Rodrick F. Wimberly to address this matter."

Gipson further alleged in her motion that on May 2, 2006, her attorney drafted a motion to vacate the judgment of foreclosure and strike the judicial sale date that was scheduled that same day but that he was unable to file and present the motion before the judicial sale was held that morning. Gipson's attorney filed an appearance on her behalf on May 17, 2006.

On May 24, 2006, the circuit court entered an order granting plaintiff leave to respond to Gipson's motions, granting Gipson a week to reply, and setting the case for July 5, 2006, "for presentation of courtesy copies and setting of hearing date in courtroom 2802."

On June 23, 2006, plaintiff filed a response to Gipson's motions to quash service of summons, set aside the judgment of foreclosure and deny confirmation of the sale arguing that Gipson's uncorroborated testimony that she was not served was not sufficient to overcome the presumption of validity attached to a return of service.

On July 5, 2006, the status date set by the circuit court's May 24, 2006, order, Gipson did not appear and the court granted plaintiff's "motion for confirmation of sale and right to possession."[1] In its order, the circuit court confirmed the foreclosure and sale of Gipson's property, ordered a distribution of the sale funds, ordered that a deed be issued to the holder of

---

[1]This motion does not appear in the record and it is not clear when it was filed; however, Gipson has not alleged that she was not given proper notice of the motion.

the certificate of sale, ordered that the holder of the certificate of sale be entitled to possession in 30 days, and ordered that the sheriff of Cook County evict Gipson in 30 days.

On August 7, 2006, Gipson brought an emergency motion to quash service of summons. The motion was identical to her previously filed motion except that it additionally alleged the following: that the circuit court had entered an order with a briefing schedule on defendant's motion and set the matter for a "clerk status" on July 5, 2006; that defendant's attorney was out of the office on vacation from July 5 through July 18, 2006; that "due to a mis-communication error, no member of his office appeared at the clerk status and defendant's motion was stricken, and the previous court judgment of foreclosure and order confirming judicial sale were entered along with an order of possession"; that defendant's attorney did not receive plaintiff's response to defendant's motion until after he returned from vacation; and that defendant's motions were meritorious.

On August 9, 2006, the circuit court entered an order denying Gipson's August 7, 2006, emergency motion for lack of jurisdiction. Gipson then filed a motion to reconsider in which she argued that the circuit court erred in denying her emergency motion on the basis of timeliness because the motion was filed within the required 30 days in that the thirtieth day fell on Saturday, August 5, 2006, and she filed her motion on the next available court date, August 7, 2006. Gipson further contended that regardless of when her motion to reconsider was brought, the circuit court's July 5, 2006, order confirming the foreclosure and sale of Gipson's property was void because the court never had personal jurisdiction over Gipson due to the lack of proper service of summons and the default order could therefore be attacked at any time.

No. 1-06-2363

On appeal, Gipson makes the same contentions she made in her motion to reconsider. Gipson's first argument, that she filed her emergency motion within 30 days of the circuit court's order confirming the foreclosure and judicial sale, is without merit. Section 2-1301 of the Code of Civil Procedure (Code) states: "The court may in its discretion, before final order or judgment, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable." 735 ILCS 5/2-1301(e) (West 2004). Section 1.11 of the Statute on Statutes explains how the 30-day time limit of section 2-1301(e) must be computed:

"The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sunday or is a holiday as defined or fixed in any statute now or hereafter in force in this State, and then it shall also be excluded. If the day succeeding such Saturday, Sunday or holiday is also a holiday or a Saturday or Sunday then such succeeding day shall also be excluded." 5 ILCS 70/1.11 (West 2004).

There is no dispute that the circuit court's July 5, 2006, order confirming the foreclosure and sale of Gipson's property was a final and appealable order granting a default judgment to plaintiff. Thus, according to section 2-1301, Gipson had 30 days to bring a motion to set aside that judgment. In computing these 30 days, section 1.11 directs us to exclude the first day, which was July 5, the day of the judgment. Thus, with July 6 being the first day counted, the thirtieth day fell on August 4, 2006, which was a Friday and not a holiday. Gipson did not file her

-5-

emergency motion until August 7, 2006, and the motion was, therefore, not in compliance with section 2-1301. Gibson's contention that the thirtieth day fell on Saturday August 5, 2006, is inexplicable and is not supported by the case she cites as support, namely, Valdovinos v. Luna-Manalac Medical Center, Ltd., 307 Ill. App. 3d 528, 718 N.E.2d 612 (1999). In Valdovinos, the court found that the thirtieth day after an order entered September 26, 1997, was Sunday, October 26, 1997; therefore, because the thirtieth day landed on a Sunday, the court deemed defendant's motion to reconsider, filed on Monday, October 27, 1997, to be timely. Valdovinos, 307 Ill. App. 3d at 536, 718 N.E.2d at 617. The month of September has 30 days; thus four days of that month were counted toward the 30 days – the 27th through the 30th. Those four days of September were then added to 26 days of October to determine that the thirtieth day landed on October 26, 1997. See Valdovinos, 307 Ill. App. 3d at 536, 718 N.E.2d at 617. Using this same method of computation, it is clear that the thirtieth day after July 5, 2006, was Friday, August 4, 2006, making Gipson's filing on August 7, 2006, beyond the 30-day time frame set out in section 2-1301.

Thus, Gipson's motion to reconsider could only prevail if her second contention was meritorious insofar as it alleged that the circuit court never had personal jurisdiction over her due to improper service of summons and that the circuit court's entry of default judgment against her was, therefore, void. As stated by our supreme court:

"In order to have a valid judgment the court must have both jurisdiction over the subject matter of the litigation and jurisdiction over the parties. [Citation.] Personal jurisdiction may be acquired either by the party's making a general

appearance or by service of process as statutorily directed. [Citation.] A judgment rendered by a court which fails to acquire jurisdiction over the parties is void and may be attacked and vacated at any time, either directly or collaterally. [Citations.]" In re Marriage of Verdung, 126 Ill. 2d 542, 547, 535 N.E.2d 818, 820 (1989).

Where a voidness challenge is brought more than 30 days after a default judgment, it should be considered under section 2-1401, although it will not be subject to the time, due diligence, or meritorious defense requirements applicable to other section 2-1401 petitions. See Sarkissian v. Chicago Board of Education, 201 Ill. 2d 95, 104-05, 776 N.E.2d 195, 201-02 (2002) (stating, "petitions seeking relief from void judgments are section 2-1401 petitions" and "[p]etitions brought on voidness grounds need not be brought within the two-year time limitation" and "the allegation that the judgment or order is void substitutes for and negates the need to allege a meritorious defense and due diligence").

Thus, it is clear that had Gipson never appeared or otherwise participated in the case prior to the circuit court's entry of default judgment for plaintiff, she would not be precluded from anytime thereafter challenging that default as void for lack of personal jurisdiction. See In re Marriage of Verdung, 126 Ill. 2d at 547, 535 N.E.2d at 820. However, the actual facts of this case are slightly different. As noted, prior to the circuit court's entry of default judgment for plaintiff, Gipson filed a motion to quash service of summons. The circuit court then set a briefing schedule and continued the motion for status. Gipson failed to attend that status date and the court entered a default judgment for plaintiff. Thirty-three days later, Gipson appeared in court to

again challenge the circuit court's jurisdiction over her and to argue that default judgment was void for lack of jurisdiction. Thus, the issue becomes whether having raised a jurisdictional objection, Gipson's subsequent failure to attend a scheduled court date constituted a waiver or abandonment of that objection or a general appearance and submission to the court's jurisdiction.

Preliminary to this issue, however, is the question of whether the circuit court actually ruled on Gipson's initial motion to quash service of summons. The rule is clear that once a court denies a preliminary objection to *in personam* jurisdiction, the jurisdiction of that court is no longer subject to collateral attack. See Restatement (Second) of Judgments §10(2), at 100 (1982) ("A determination of an objection to notice or territorial jurisdiction precludes the party who asserted it from litigating either contention in subsequent litigation"). It, therefore, follows that if the circuit court denied Gipson's motion and determined that it did have *in personam* jurisdiction, Gipson would be precluded from reasserting that objection beyond the 30-day period during which the circuit court retained its jurisdictional power to reconsider its rulings.

In this regard, Gipson's emergency motion stated that her original motion was stricken. Subsequently, in her appellate brief, she states: "There is no evidence in the record that the trial court even ruled on the Defendant's first Motion to Quash. Defendant only presumes her motion was denied, because the trial court entered orders to confirm the judicial sale of the property and entered an order of possession." Plaintiff does not challenge Gipson's contention in this regard. Based on this apparent consensus between the parties and the state of the appellate record, we must presume that the court did not formally rule on Gipson's motion prior to granting plaintiff a default judgment.

A court's failure to rule on a motion does not constitute a denial of the motion. See Rodriguez v. Prisoner Review Board, 376 Ill. App. 3d 429, 432, 876 N.E.2d 659, 663 (2007) ("A litigant's failure to obtain a ruling on a motion does not translate into a denial of the motion by the court"); Commerce Trust Co. v. Air 1st Aviation Cos., 366 Ill. App. 3d 135, 142, 851 N.E.2d 131, 137 (2006); Herricane Graphics, Inc. v. Blinderman Construction Co., 354 Ill. App. 3d 151, 158, 820 N.E.2d 619, 626 (2004). Rather, "it is the responsibility of the party filing a motion to request the trial judge to rule on it, and when no ruling has been made on a motion, the motion is presumed to have been abandoned absent circumstances indicating otherwise." Rodriguez, 376 Ill. App. 3d at 433, 876 N.E.2d at 663, citing Commerce Trust Co., 366 Ill. App. 3d at 142, 851 N.E.2d at 137; Herricane Graphics, 354 Ill. App. 3d at 158, 820 N.E.2d at 626.

Thus, we return to the question of whether Gipson's failure to attend a scheduled court date on her motion to quash service of summons precluded her from reasserting a jurisdictional challenge 33 days after a default judgment. Plaintiff would presumably contend that Gipson's conduct in filing an objection to jurisdiction and then failing to appear for a status date constituted a waiver of the objection and a submission to court's jurisdiction which would validate any potential defect in the court's personal jurisdiction.

However, as stated by our supreme court, "a party who submits to the court's jurisdiction does so only prospectively and the appearance does not retroactively validate orders entered prior to that date." In re Marriage of Verdung, 126 Ill. 2d at 547, 535 N.E.2d at 820, citing J.C. Penney Co. v. West, 114 Ill. App. 3d 644, 647, 449 N.E.2d 188, 190 (1983); see also Sullivan v. Bach, 100 Ill. App. 3d 1135, 1142, 427 N.E.2d 645, 651 (1981); Sarkissian, 201 Ill. 2d at 132,

No. 1-06-2363

776 N.E.2d at 217 (Thomas, J., joined by Fitzgerald, J., dissenting). In West, a default judgment was entered against defendant in February of 1978. West, 114 Ill. App. 3d at 645, 449 N.E.2d at 189. In June, defendant's first of three attorneys filed a special appearance and was granted leave to file a motion to quash service of summons. West, 114 Ill. App. 3d at 645, 449 N.E.2d at 189. A hearing was scheduled for September, but defendant did not appear and no order was entered. West, 114 Ill. App. 3d at 645, 449 N.E.2d at 189. In June of the next year, defendant, through a second attorney, filed a section 72 petition (a precursor to section 2-1401) in which he argued to vacate the default judgment by asserting a defense on the merits without challenging the service of process. West, 114 Ill. App. 3d at 645, 449 N.E.2d at 189. The court denied the petition. West, 114 Ill. App. 3d at 645, 449 N.E.2d at 189. In February of the next year, a third attorney made a special appearance on behalf of defendant to quash service of summons. West, 114 Ill. App. 3d at 645, 449 N.E.2d at 189. The court granted defendant's motion to quash, but subsequently vacated that order upon plaintiff's motion which argued that defendant had submitted himself to the jurisdiction of the court by presenting his section 72 petition. West, 114 Ill. App. 3d at 645-46, 449 N.E.2d at 189.

On appeal, the court noted:

"[T]he law is clear in Illinois that ' "[a] judgment, order or decree entered by a court which lacks jurisdiction of the parties or of the subject matter *** is void, and may be attacked at any time or in any court, either directly or collaterally." ' [Citations.] Additionally, we note that service of summons upon a defendant is essential to create personal jurisdiction of the court. [Citation.]

-10-

However, it is well settled in Illinois that a party challenging the personal jurisdiction of the court must limit his appearance solely to that purpose and that where the party raises additional defenses, he has entered a general appearance and submitted himself to the court's jurisdiction. [Citations.]" West, 114 Ill. App. 3d at 646, 449 N.E.2d at 190.

The court further stated: "Illinois courts have held that where a judgment is void when entered, it remains void notwithstanding subsequent general appearances and, that a general appearance does not serve to validate retroactively a judgment void when entered." West, 114 Ill. App. 3d at 646, 449 N.E.2d at 190. The court then held that although defendant's section 72 petition, which alleged a meritorious defense, constituted a general appearance, that general appearance submitted defendant to the court's jurisdiction only prospectively and would not act to validate a previous order entered without jurisdiction. West, 114 Ill. App. 3d at 647, 449 N.E.2d at 190. Accordingly, the court remanded for a determination of whether defendant had been served and directed the trial court to set aside the judgment as void if it found that there was no service. West, 114 Ill. App. 3d at 648, 449 N.E.2d at 190.

In reaching its determination, the court in West distinguished and otherwise disagreed with the previous appellate decision in Washington v. Clayter, 91 Ill. App. 3d 489, 414 N.E.2d 1085 (1980). West, 114 Ill. App. 3d at 648, 449 N.E.2d at 191. In Washington, plaintiff brought suit against his former attorney for professional negligence. Washington, 91 Ill. App. 3d at 491, 414 N.E.2d at 1087. Summons was issued and purportedly served, but defendant did not answer or otherwise appear. Washington, 91 Ill. App. 3d at 491, 414 N.E.2d at 1087. Plaintiff

thereafter sent a notice of motion for a default to defendant and, on the date scheduled for the motion, defendant specially appeared and maintained that he had not been properly served. Washington, 91 Ill. App. 3d at 491, 414 N.E.2d at 1087. The court granted defendant 14 days to file affidavits in support of his contention or, in the alternative, to file responsive pleadings. Washington, 91 Ill. App. 3d at 491, 414 N.E.2d at 1087. The court also continued plaintiff's motion until May 31, which happened to be a court holiday. Washington, 91 Ill. App. 3d at 491, 414 N.E.2d at 1087. Upon discovering the scheduling error, plaintiff sent defendant a letter announcing the rescheduling of the court date to May 28. Washington, 91 Ill. App. 3d at 491, 414 N.E.2d at 1087. Defendant did not appear on that date or otherwise comply with the court's order to file affidavits, but only again appeared some 16 months later after the court had granted plaintiff a default judgment and the case had been set for trial on the issue of damages. Washington, 91 Ill. App. 3d at 492, 414 N.E.2d at 1087.

On appeal, the court found that the trial court's order directing defendant to file affidavits within 14 days obligated defendant to present his claims in the time allowed in order to preserve his contentions. Washington, 91 Ill. App. 3d at 494, 414 N.E.2d at 1089. The court stated:

"If the orders of a court are to have any binding force, disregard of court-ordered time limits cannot be condoned, particularly where employed to defeat a subsequent judgment. Under defendant's theory of the case, he would have the right to repeatedly raise a collateral defense without fulfilling his obligation to present evidence thereon. Quite the contrary, once a collateral defense is raised, it surely must be pursued, or else be held abandoned. Accordingly, defendant's

noncompliance with the court order *** and attendant failure to follow through with his claim of improper service manifested an abandonment of his contentions. As a consequence, the continuation of the cause to default was proper under the circumstances presented by the instant case." Washington, 91 Ill. App. 3d at 494, 414 N.E.2d at 1089.

In its discussion of Washington, the court in West distinguished its facts by noting that the Washington defendant moved to quash service of summons prior to the entry of the default judgment and then failed to appear or file affidavits as required by the court's order. West, 114 Ill. App. 3d at 648, 449 N.E.2d at 191. In contrast, the West court noted that its defendant was never ordered to file affidavits and no order was entered on the date defendant was supposed to present his motion to quash service of summons. The court further stated that if the judgment was void, "nothing defendant did subsequent to that judgment could retroactively validate it." West, 114 Ill. App. 3d at 648, 449 N.E.2d at 191.

While the instant case is factually more similar to Washington than it is to West, we nevertheless find the law contained in West, which, as previously noted, has been cited with approval by our supreme court in In re Marriage of Verdung, to be ultimately controlling. Washington confirms that an abandonment of a challenge to jurisdiction can, at a certain point, become a general appearance. We recognize that a party should not be allowed to disregard court orders without consequence. However, the fundamentals of personal jurisdiction and voidness as expressed in West and confirmed by our supreme court in In re Marriage of Verdung (see also Sullivan, 100 Ill. App. 3d at 1142, 427 N.E.2d at 651; Sarkissian, 201 Ill. 2d at 132, 776

No. 1-06-2363

N.E.2d at 217 (Thomas, J., joined by Fitzgerald, J., dissenting)) cannot be preempted. Thus, although an abandonment of an objection to jurisdiction may constitute a waiver of that objection and thereby subject a party to a court's jurisdiction as if a general appearance had been filed, that jurisdiction can only be applied prospectively.

In order for the court to have had personal jurisdiction in this case at the time of its entry of default judgment, either Gipson must have been properly served (an issue which has not yet been subjected to the scrutiny of a hearing), or, alternatively, Gipson must have submitted herself to the court's personal jurisdiction over her. See In re Marriage of Verdung, 126 Ill. 2d at 547, 535 N.E.2d at 820. The point at which a defendant's failure to sustain an objection to jurisdiction becomes a submission to jurisdiction is unclear. In Washington, the court found that the defendant effectively submitted to the court's jurisdiction after a 16-month absence from the litigation and after having been ordered to file affidavits in support of his jurisdictional objection. Washington, 91 Ill. App. 3d at 494, 414 N.E.2d at 1089. In this case, because a general appearance cannot be applied to retroactively validate a judgment entered without jurisdiction (see In re Marriage of Verdung, 126 Ill. 2d at 547, 535 N.E.2d at 820; West, 114 Ill. App. 3d at 647, 449 N.E.2d at 190), in order for Gipson's "abandonment" of her objection to jurisdiction to validate the circuit court's entry of default judgment, that abandonment must have been complete prior to the entry of the default judgment. In other words, Gipson's abandonment must have been complete once she failed to appear at the scheduled status date on July 5, 2006, since the circuit court, then and there, immediately entered a final judgment confirming the foreclosure and sale of her property without any postponement. While we have doubts that a defendant who misses a

-14-

status date on a motion to quash service of summons can immediately be said to have abandoned her objection to jurisdiction (*cf*. Freeborn & Peters v. Professional Seminars Associates, Inc., 176 Ill. App. 3d 714, 719, 531 N.E.2d 806, 819 (1988) (finding that "substantial injustice" occurred when court entered a default judgment on the day defendant's attorney withdrew)), we choose not to rule on this issue since it has not been addressed by the parties or the court below.

We finally address plaintiff's contention that Gipson is precluded from relief by section 2-1401(e) of the Code of Civil Procedure (735 ILCS 5/2-1401(e) (West 2004)) because the subject property has been sold to a third party that was not a party to the original action. We allowed that third party, Third Coast Holders, to file an intervenor's brief in this appeal. On June 29, 2007, we issued our initial opinion in this case and remanded to the trial court to determine whether Gipson had abandoned her objection to personal jurisdiction and whether Third Coast Holders was protected by section 2-1401(e). However, before the mandate issued, plaintiff and Third Coast Holders filed petitions for rehearing with supporting briefs arguing that section 2-1401(e) applied because there was no evidence of a lack of jurisdiction in the record at the time the judicial sale was held. Plaintiff and intervenor argued that once the sale was completed, Third Coast Holders became the holder of a certificate of sale and section 2-1401(e) then applied to protect its right to complete its purchase of the property notwithstanding Gipson's subsequently filed motions challenging jurisdiction. Concurrent with its petition for rehearing, plaintiff moved to supplement the appellate record to include the certificate of sale. We must, however, deny plaintiff's motion to supplement the appellate record to include the certificate of sale, since it does not conform to the requirements of Supreme Court Rule 324 (155 Ill. 2d R. 324) and Rule 19 of

No. 1-06-2363

the Administrative Rules of the Appellate Court, First District (App. Ct. First Dist. R. 19), which requires such records to be bound and certified by the clerk of the circuit court. However, we allowed the petition for rehearing for the following reasons.

Section 2-1401(e) states:

"(e) Unless lack of jurisdiction affirmatively appears from the record proper, the vacation or modification of an order or judgment pursuant to the provisions of this Section does not affect the right, title or interest in or to any real or personal property of any person, not a party to the original action, acquired for value after the entry of the order or judgment but before the filing of the petition, nor affect any right of any person not a party to the original action under any certificate of sale issued before the filing of the petition, pursuant to a sale based on the order or judgment." 735 ILCS 5/2-1401(e) (West 2004).

This section has been interpreted as "intending to protect *bona fide* purchasers for value." In re Application of the Cook County Collector for Judgment & Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1985 & Petition for Tax Deed of Leslie C. Barnard, 228 Ill. App. 3d 719, 734, 593 N.E.2d 538, 549 (1991). Intervenor, however, contends that although a *purchaser* may need to be *bona fide* to enjoy the protections of section 2-1401(e), that requirement does not also apply to a holder of a certificate of sale. We disagree. Although section 2-1401(e) refers to the rights of a person who acquires property for value and separately refers to the rights of a person under a certificate of sale, we do not believe this distinction indicates that while a purchaser must act in good faith, a holder of a certificate of

-16-

sale bears no such burden. In fact, the Joint Committee Comments of 1955 explained subsection (e) (which was identical to the current subsection (e) of the statute) without making any such distinction:

"This subsection [e] is intended to protect a bona fide purchaser of property from the effects of an order setting aside a judgment or decree affecting the titled to the property if he was not a party to the original proceeding, when lack of jurisdiction does not affirmatively appear from the record proper. Bona fide purchasers have long been protected in such cases, the courts having held that such purchasers 'may rely upon the decree the same as any other stranger to the adjudication.' [Citation.] This subsection is merely confirmatory of these decisions and is included to promote the merchantability of property affected by court judgments and decrees." Ill. Ann. Stat., ch. 110, par. 2-1401, Joint Committee Comments, at 603-04 (Smith-Hurd 1983).

Thus, although a holder of a certificate of sale has not completed his purchase but has only made an irrevocable offer to purchase the property (see Commercial Credit Loans, Inc. v. Espinoza, 293 Ill. App. 3d 923, 927, 689 N.E.2d 282, 285 (1997)), the committee notes to section 2-1401(e) indicate that such a person should be protected in the same manner as a purchaser. Thus, in order for Third Coast Holders to be entitled to the protection of section 2-1401(e), it must have been a *bona fide* holder of a certificate of sale.

The time at which to determine whether a holder of a certificate of sale is *bona fide* is not the date the judicial sale is confirmed but the date the certificate is issued. The plain language of

section 2-1401(e) states that the vacation or modification of an order upon a party's petition for relief from judgment will not affect a person's rights "under any certificate of sale *issued before the filing of the petition* [for relief from judgment]." (Emphasis added.) 735 ILCS 5/2-1401(e) (West 2004). Thus, if a bidder at a judicial sale following a mortgage foreclosure learns that the mortgagor has brought a petition for relief from judgment before that bidder obtains the certificate of sale, section 2-1401(e) will not act to protect the bidder's rights in the property if he subsequently obtains the certificate of sale. Only matters prior to the issuance of the certificate can affect whether a holder of a certificate of sale can be deemed not to be *bona fide*.

Thus, if Third Coast Holders was a *bona fide* holder of the certificate of sale, its interests in the property cannot be subordinated by any interests of Gipson. A purchaser will not be considered *bona fide* if he has "constructive notice of an outstanding title or right in another person." In re Application of the Cook County Collector, 228 Ill. App. 3d at 734, 593 N.E.2d at 549. "In addition, a purchaser having notice of facts that would put a prudent man on inquiry is chargeable with knowledge of other facts he might have discovered by diligent inquiry." In re Application of the Cook County Collector, 228 Ill. App. 3d at 734, 593 N.E.2d at 549. The term "*bona fide*" is defined as "In or with good faith, honestly, openly, and sincerely; without deceit or fraud." Black's Law Dictionary at 177 (6th ed. 1990).

As noted, section 2-1401(e) states that a petition for relief from judgment can only be applied against a person who has obtained a certificate of sale if a "lack of jurisdiction affirmatively appears from the record proper." 735 ILCS 5/2-1401(e) (West 2004). This determination requires courts to review the whole record. See Bank of New York v. Unknown

-18-

Heirs & Legatees, 369 Ill. App. 3d 472, 477, 860 N.E.2d 1113, 1118 (2006).

Here, the record reflects that Gipson was personally served on September 29, 2005. On January 17, 2006, the trial court granted plaintiff's motions for foreclosure and order of sale. On May 2, 2006, the judicial sale took place and Third Coast Holders was the high bidder. Gipson made her first contact with the court three days later on May 5, 2006, when she filed her motion to quash service of summons. In that motion, Gipson alleged that she had not been served, that she first learned of the foreclosure action on April 29, 2006, when a representative of plaintiff called her, and that she had previously been in contact with plaintiff in attempts to reinstate her mortgage after temporarily being unable to pay her mortgage. Thus, if, as plaintiff and intervenor contend, Third Coast Holders became the holder of the certificate of sale on May 2, 2006, the date of the judicial sale, Gipson would have no further claim to the property as long as Third Coast Holders was *bona fide* as of that date.

However, the date Third Coast Holders became the holder of the certificate of sale is not apparent in the appellate record as now presented since, as noted, we felt compelled to deny plaintiff's motion to supplement the record on appeal with an uncertified document.

Consequently, pursuant to our power under Supreme Court Rule 366 (155 Ill. 2d R. 366), we remand to the circuit court to ascertain whether Third Coast Holders received the certificate of sale and, if so, whether it was *bona fide* as of that date. If both propositions are true, then the judgment of the circuit court stands affirmed. If either is untrue, then the judgment is reversed for the reasons heretofore discussed. In that event, the court shall determine whether Gipson abandoned her objection to jurisdiction (a finding that we have already found to be tenuous under

the state of this record on appeal).  If the circuit court finds, from the facts presented, that Gipson is not precluded from challenging the court's *in personam* jurisdiction, then the court may proceed to substantively resolve Gipson's jurisdictional objection.

Remanded.

FITZGERALD SMITH, J., and McNULTY, J., concur.