FOURTH DIVISION
 FILED: 02/21/02

No. 1-00-1742

MARTA VALDOVINOS, as parent, guardian, and next friend ) Appeal from
 the
of DANIEL VALDOVINOS, a disabled minor; and THE CHICAGO ) Circuit Court
 of
TITLE AND TRUST COMPANY, an Illinois corporation, as ) Cook
 County
guardian of the estate of DANIEL VALDOVINOS, a disabled minor; )
 )
 Plaintiffs-Appellees/Cross-Appellants, )
 )
 v. )
 )
LUNA-MANALAC MEDICAL CENTER, LTD., d/b/a ANTILLAS )
FAMILY HEALTH CENTER, an Illinois corporation, and )
JULIETTA LUNA JOSON, M.D., individually and as an agent )
and employee of LUNA-MANALAC MEDICAL CENTER, LTD., )
d/b/a ANTILLAS FAMILY HEALTH CENTER; )
 )
 Defendants-Appellants/Cross-Appellees. )
 )
 and )
 ) Honorable
PARKE, DAVIS & COMPANY, a Michigan corporation, ) John V.
 Virgilio and
 ) Susan Zwick
 Defendants. ) Judges Presiding.

 PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:
 The defendants, Luna-Manalac Medical Center, Ltd. (Luna) and Dr.
Julietta Luna Joson (Joson) appeal from a circuit court order allowing the
plaintiffs, Marta Valdovinos (Valdovinos), as parent, guardian, and next
friend of Daniel Valdovinos (Daniel), and Chicago Title and Trust Company
(Chicago Title), as guardian of the Estate of Daniel Valdovinos, a disabled
minor, to voluntarily dismiss the instant action pursuant to section 2-1009
of the Code of Civil Procedure (Code) (735 ILCS 5/2-1009 (West 1996)). The
plaintiffs cross-appeal from the portion of the trial court's order
requiring that they pay the defendants' costs and expenses. They also seek
review of various pre-trial rulings. For the reasons which follow, we
affirm.
 This action commenced in the circuit court some 10 years ago and,
despite the fact that it has never proceeded to trial, is before this court
for the second time. The record consists of 105 volumes, and, needless to
say, the procedural history of the case is complex. We will attempt to
limit our recitation of the facts to those necessary for an adequate
understanding of the case and resolution of the issues presented.
 On June 6, 1991, Valdovinos, as parent and next friend of Daniel,
filed the initial complaint in this action, asserting causes of action for
medical negligence against various doctors and hospitals involved in her
pre-natal care and Daniel's birth and post-delivery care. During the
course of the litigation, Valdovinos filed multiple amended complaints
adding new defendants and new claims. The seventh amended complaint, the
final one filed, lists as plaintiffs not only Valdovinos, in her
representative capacity, but also Chicago Title, as the guardian of
Daniel's estate. In that complaint, the plaintiffs alleged that, during
Valdovinos' pregnancy, Joson had given her an injection of a drug
manufactured by Parke Davis and that, as a result of the injection, Daniel
had suffered severe neurological damage. The plaintiffs asserted, inter
alia, a negligence claim against Luna, the medical clinic where Joson
worked, and Joson, individually and as an agent of Luna, and a product
liability claim against Parke Davis, which is not a party to this appeal.
 On June 21, 1997, counsel for Luna and Joson issued a subpoena to Dr.
Tanadori Tomita, one of the doctors who treated Daniel shortly after his
birth, requiring him to appear for an evidence deposition. On July 28,
1997, the plaintiffs brought a motion to compel Dr. Tomita to speak with
their attorney prior to his deposition. In that motion, the plaintiffs
alleged that, in June 1997, before Dr. Tomita had retained counsel, he
agreed to speak to the plaintiffs' counsel prior to his deposition but
that, after retaining attorney Pamela Gellen, he refused to do so. The
plaintiffs further alleged that Gellen had "engaged in discussions with
counsel for Parke Davis." The plaintiffs expressed concern that the
discussions between Parke Davis' counsel and Gellen were "effectively
subverting prohibitions against discussions with treating physicians" in
violation of the rule pronounced in Petrillo v. Syntex Laboratories, Inc.,
148 Ill. App. 3d 581, 588, 499 N.E.2d 952 (1986). The plaintiffs sought
orders prohibiting "indirect communications" between Gellen and counsel for
Parke Davis and requiring Dr. Tomita to meet with their attorneys. Judge
Susan Zwick denied the plaintiffs' motion that same day. Dr. Tomita's
deposition was taken on July 29, 1997. Gellen represented Dr. Tomita at
the deposition.
 On August 18, 1997, the case was assigned to Judge Denise O'Malley
for trial. Thereafter, the case was subject to extensive motion practice
as the parties, in combination, filed a total of more than 100 motions in
limine. Also, on August 19, 1997, the plaintiffs filed their fifth and
sixth supplements to their answers to Supreme Court Rule 213 (177 Ill. 2d
R. 213) interrogatories, in which they disclosed new witnesses and new
opinions of previously disclosed witnesses.
 On August 21, 1997, Judge O'Malley granted Pamela Gellen's emergency
motions to quash subpoenas which the plaintiffs had issued requiring that
she appear for discovery and evidence depositions and at trial. The
plaintiffs contend that they issued the subpoenas in question to Gellen
because, due to certain testimony Dr. Tomita gave at his deposition, they
believed that Dr. Tomita had engaged in ex parte communications with
counsel for Luna and Joson, either personally or through Gellen.
 On August 28, 1997, the plaintiffs sought leave to file a seventh
amended complaint. Judge O'Malley allowed the plaintiffs leave to file the
complaint but subsequently ordered certain paragraphs stricken from the
complaint, some with prejudice and others with leave to replead, which the
plaintiffs did not do. She also ordered stricken from the complaint any
reference to Warner-Lambert Company, which was named for the first time in
that complaint.
 On September 3, 1997, Judge O'Malley entered rulings on the
objections raised during the evidence depositions of several of Daniel's
treating physicians, including Dr. Tomita. The plaintiffs' counsel
objected to certain of Gellen's comments being stricken from Dr. Tomita's
deposition, asserting that the comments suggested Gellen had engaged in ex
parte communications with defense counsel. Judge O'Malley stated: "We have
had a ruling on this before based on Petrillo, I said your suspicion that
Petrillo is violated by conversations between two lawyers and you have
nothing, no real evidence whatever to support it."
 On September 9, 1997, the plaintiffs first disclosed the existence of
a computer animated videotape which, they alleged, depicted the opinions of
their expert witnesses. Judge O'Malley expressed doubt as to whether she
would allow the tape to be presented at trial but stated she would consider
the matter overnight. On September 10, 1997, the plaintiffs filed an
emergency petition for substitution of judge for cause pursuant to section
2-1001(a)(3) of the Code (735 ILCS 5/2-1001(a)(3) (West 1996)). Judge
Jacqueline Cox heard and denied the petition that same day. When the
parties returned to Judge O'Malley's courtroom, the plaintiffs indicated
their intent to file another motion for substitution of judge for cause the
following day, containing more specific allegations of bias, ill will, and
prejudice. Judge O'Malley stated that she believed the plaintiffs' motions
for substitution were attempts at forum shopping because they were unhappy
with her rulings. She informed the parties that she was, nonetheless,
contemplating recusing herself from the case but that she would consider
the matter overnight. In urging Judge O'Malley not to recuse herself from
the case due to the plaintiffs' tactics, counsel for Luna and Joson
expressed his belief that the plaintiffs would next "pull a voluntary
dismissal." The plaintiffs' counsel responded: "I guarantee that's not
going to happen."
 On September 11, 1997, Judge O'Malley issued over 100 written orders
regarding various of the parties' motions on which she had already heard
argument and ruled. By way of these orders, Judge O'Malley, inter alia,
barred the plaintiffs from calling certain witnesses at all and from
eliciting certain testimony or opinions from other witnesses due to
untimely or inadequate disclosures and/or the cumulative nature of the
proposed testimony. Also on September 11, 1997, the plaintiffs filed
another motion for substitution of judge for cause. That motion, however,
was rendered moot when Judge O'Malley recused herself from the case that
same day for medical reasons. Judge O'Malley specifically declined to rule
on the admissibility of the plaintiffs' videotape as demonstrative
evidence, leaving the matter to be decided by the judge to whom the case
was next assigned.
 On September 12, 1997, the plaintiffs filed a motion for a mistrial.
Judge Donald O'Connell heard and denied the motion, noting that trial had
not yet commenced.
 On September 19, 1997, the plaintiffs filed an action in the chancery
division (docket number 97 CH 11755) naming as defendants, inter alia,
counsel for Joson in the instant case, Dr. Tomita, and Pamela Gellen. The
plaintiffs also named the attorneys representing Parke Davis in the instant
case as respondents in discovery in the chancery action. The plaintiffs
alleged that Dr. Tomita had refused to meet with their attorneys prior to
giving his deposition in the instant action and that certain answers he
gave at the deposition demonstrated that he had engaged, through Gellen, in
prior ex parte communications with defense counsel. In count one of the
complaint, the plaintiffs sought a mandatory injunction ordering Dr. Tomita
to meet with their attorneys prior to giving his deposition in the instant
case. In count two, the plaintiffs alleged a cause of action for
conspiracy to commit and the actual commission of "outrageous tortious
conduct" against Dr. Tomita, Gellen, counsel for Luna and Joson, and
others. In their prayer for relief on count two, the plaintiffs sought
orders: prohibiting, inter alia, Gellen and the defendants' attorneys from
communicating with Daniel's treating physicians, including Dr. Tomita,
either directly or indirectly through counsel; enjoining Dr. Tomita from
communicating with anyone regarding Daniel's medical treatment, either
directly or indirectly through counsel, without the plaintiffs' consent;
impounding the evidence deposition given by Dr. Tomita in the instant case
and restraining the parties in this case from offering the deposition;
barring Dr. Tomita from testifying in the instant case due to Petrillo
violations; and disqualifying certain of the defendants' attorneys in the
instant case.
 After Judge O'Malley's recusal, the instant case was assigned to
Judge Virgilio for trial. The plaintiffs filed a motion seeking de novo
review of all the motions in limine upon which Judge O'Malley had ruled,
asserting that false statements made to Judge O'Malley by counsel for the
defendants had resulted in "patently erroneous" rulings. On September 22,
1997, the plaintiffs filed an emergency motion to stay the proceedings in
the instant case so that they could proceed with a motion for a preliminary
injunction and discovery on an expedited basis in their newly filed
chancery action. The plaintiffs asserted that the allegations in the
chancery action provided grounds to disqualify counsel for the defendants
in the instant case and to bar certain witnesses from testifying in the
instant case. Accordingly, they argued, if the chancery division action
proved successful, any judgment in the instant case would have to be set
aside as void as it would be "based upon illegally obtained evidence."
Also on September 22, 1997, Luna and Joson filed a motion to bar the
plaintiffs from using the computer animated videotape. The following day,
Parke Davis filed a motion to the same effect.
 On September 22, 1997, Judge Virgilio denied the plaintiffs' motion
to stay the proceedings. On September 23, 1997, the plaintiffs presented
that same motion to Judge O'Connell. Judge O'Connell denied the motion,
noting that all of the relevant relief sought in the chancery action could
be sought in the instant action. After denying the plaintiffs' motion,
Judge O'Connell commented: "I'd say further, the plaintiffs, if you're not
ready to try the case, take a voluntary dismissal. Relief is available to
you. *** [I]f you're not ready to try this case, you have the tools
available." Counsel for the plaintiffs responded: "We're - we're ready.
We're ready for trial."
 On September 25, 1997, Judge Virgilio reversed Judge O'Malley's
denial of one of the plaintiffs' motions in limine but left undisturbed the
remainder of Judge O'Malley's rulings, stating that they were not "patently
incorrect." Further, Judge Virgilio granted the defendants' motions to bar
the plaintiffs from using the videotape as demonstrative evidence at trial.
 After Judge Virgilio issued these rulings, he asked the parties whether
they had any questions they wished him to ask the jurors during voir dire.
One of the attorneys for the plaintiffs informed the judge that his co-
counsel, who was not present in court at that time, was bringing the
questions and should be arriving shortly. Co-counsel arrived shortly
thereafter and stated:
 "Your Honor, when we appeared before Judge O'Connell earlier
 this week after we were first with you, then we moved for a - we gave
 them the motion for a stayed order. He, at that time, said that you
 could give us that relief.
 And since you had already denied the motion, he also suggested
 that we take a voluntary nonsuit since we have a minor, and we're
 going to do that, your Honor. I have a motion for voluntary nonsuit."
Counsel presented Judge Virgilio with a written motion to voluntarily
dismiss the case without prejudice. The defendants objected, arguing,
among other things, that they had not been given notice of the motion.
Judge Virgilio gave the defendants leave to file responses to the motion
and continued the matter to the next day, ordering that the plaintiffs make
several modifications to their written motion. Later that day, the
plaintiffs filed a pleading styled "Plaintiffs' Revised Motion for a
Voluntary Dismissal Without Prejudice", reflecting the changes which Judge
Virgilio had ordered. In the revised motion, the plaintiffs asserted that
they were seeking a voluntary dismissal because both Judge Virgilio and
Judge O'Connell had denied their motion to stay proceedings in the case
pending expedited discovery in the chancery action, an action which the
plaintiffs alleged would "materially affect" this action.
 On September 26, 1997, Parke Davis filed its written objections to
the plaintiffs' motion to voluntarily dismiss the case without prejudice.
Joson and Luna also filed a memorandum in opposition to the plaintiffs'
motion. When the matter was heard on September 26, Judge Virgilio granted
the revised motion for a voluntary dismissal pursuant to section 2-1009 of
the Code. The order granting the voluntary dismissal also provided that
"the plaintiff is ordered to pay all costs associated with this case
including the costs incurred by the defendants in the taking of depositions
and those other costs as provided for in Galowich v. Beech Aircraft Corp.,
93 Ill. App. 3d 690, reversed on other grounds 92 Ill. 2d 157 (1981)." The
order did not state the amount of costs to be paid or specify which of the
plaintiffs was to make the payment.
 On October 21, 1997, Judge Virgilio, inter alia, ordered the parties
to provide briefs "regarding Illinois Supreme Court Rule 219(e)." 166 Ill.
2d R. 219(e). On October 27, 1997, Parke Davis filed a brief in support of
its petition for costs, in which it also requested that the trial court
reconsider its September 26, 1997, order granting a voluntary dismissal
without prejudice. Also on October 27, 1997, the plaintiffs filed a motion
to vacate the trial court's September 26, 1997, order and a motion seeking
an assessment of fees and costs pursuant to Supreme Court Rule 137 (155
Ill. 2d R. 137). The record is void of any indication that the plaintiffs'
Rule 137 motion was ever noticed for hearing or ruled upon by the trial
court.
 On November 12, 1997, the parties appeared before the court. On that
date, Judge Virgilio orally informed the parties that the motion to vacate
the voluntary dismissal without prejudice was denied. That same day, Judge
Virgilio entered a written "Memorandum and Order" in which he found that
the "plaintiff" had "abused section 2-1009" and "violated Supreme Court
Rule 219(e)" and set the amount of costs to be paid at $117,059.41. An
exhibit attached to the court's order indicates that, of the $117,059.41
awarded, $37,886.27 was due to Parke Davis and $79,173.14 was due to Luna
and Joson. Like the September 26, 1997, order, this order does not state
which plaintiff is required to pay the assessed costs.
 On November 26, 1997, Parke Davis, Luna, and Joson filed a joint
motion requesting that the court vacate its September 26, 1997, order
granting the plaintiffs' motion for a voluntary dismissal and resume the
trial of the cause as costs had not been paid, or, in the alternative, that
it dismiss the case "with prejudice." Judge Virgilio denied the motion on
December 11, 1997. During the hearing on December 11, the attorney
representing Joson and Luna asked the court for clarification as to who was
responsible for the payment of the costs awarded on November 12. Judge
Virgilio declined to decide the matter, indicating his belief that another
tribunal, such as the probate court or this court, should determine who was
responsible for paying costs.
 Between October 24, 1997, and January 28, 1998, the plaintiffs and
all three defendants filed numerous notices of appeal and cross-appeal
under various docket numbers. In an opinion issued on September 2, 1999,
we dismissed all of the appeals and cross-appeals for a lack of
jurisdiction, concluding that none of the various orders from which the
parties appealed were final orders, and remanded the case to the circuit
court. Valdovinos v. Luna-Manalac Medical Center, Ltd., 307 Ill. App. 3d
528, 718 N.E.2d 612 (1999). In relevant part, we held that the trial
court's orders granting the plaintiffs' motion for a voluntary dismissal
and assessing costs were not capable of enforcement, and thus not final
orders, as the trial court assessed costs against the "plaintiff" but did
not specify which of the two plaintiffs was to pay.
 On remand, on January 5, 2000, Parke Davis filed a motion to assign
the case to a trial judge "to correct the orders involved in the voluntary
dismissal and rule on the motions for sanctions pursuant to the opinion of
the appellate court." The case was assigned to Judge Susan Zwick, who set a
briefing schedule for the motion. On April 3, 2001, the plaintiffs filed a
single pleading which included their response to Parke Davis' motion and
their own motion for reconsideration of Judge Virgilio's order awarding
expenses pursuant to Rule 219(e). That same day, Luna and Joson filed a
memorandum of law in support of Judge Virgilio's prior rulings.
 On April 21, 2000, Judge Zwick issued a memorandum opinion and order
in which she denied the plaintiffs' motion to reconsider Judge Virgilio's
order assessing costs and granted Parke Davis' motion to correct Judge
Virgilio's November 12, 1997, order. Judge Zwick's order provided, in
part, as follows:
 "(3) The court's order of November 12, 1997, including the
 provision granting Plaintiff's motion pursuant to 735 ILCS 5/2-1009,
 and its specific findings pursuant to Supreme Court Rule 219(e), is
 adopted, incorporated and made a part of this court's order;
 (4) The Plaintiffs, Marta Valdovinos, in her representative
 capacity only, as guardian of the person, and next friend of Daniel
 Valdovinos, and Chicago Title and Trust Company, in it's [sic]
 representative capacity only, as guardian of the Estate of Daniel
 Valdovinos, a disabled minor are ordered to pay the defendants costs
 and other expenses in the amount of $117,059.41."
The order also contained Rule 304(a) (155 Ill. 2d R. 304(a)) language of
finality and appealability.
 On May 17, 2000, the plaintiffs filed a motion to reconsider Judge
Zwick's April 21 order. On May 19, Luna and Joson filed a notice of
appeal, docketed under number 1-00-1742, from, inter alia, Judge Virgilio's
September 26, 1997, and November 12, 1997, orders and Judge Zwick's April
21, 2000, order. On May 23, 2000, Judge Zwick denied the plaintiffs'
motion for reconsideration. Thereafter, on June 6, 2000, Luna and Joson
filed an additional notice of appeal under docket number 1-00-1742. On
June 8, 2000, the plaintiffs filed a notice of cross-appeal.[1]
 As a preliminary matter, we note that the notice of appeal filed by
Luna and Joson on May 19, 2000, prior to the trial court's May 23, 2000,
ruling on the plaintiffs' motion for reconsideration of its April 21, 2000,
order, was premature and did not vest this court with jurisdiction. In re
Marriage of Cynthia Kay Uphoff, 99 Ill. 2d 90, 95, 457 N.E.2d 426 (1983).
Their second notice of appeal, filed on June 6, 2000, and the plaintiffs'
notice of cross-appeal, filed on June 8, 2000, were, however, timely and
vest this court with jurisdiction. We further wish to clarify that our
jurisdiction over the instant case is pursuant to Rule 304(a) (155 Ill. 2d
R. 304(a)), as Luna and Joson assert, rather than Rule 301 (155 Ill. 2d R.
301) as the plaintiffs assert. This is because, at the time the notice of
appeal and cross-appeal were filed, the plaintiffs' motion for sanctions
pursuant to Rule 137 remained pending. See Valdovinos, 307 Ill. App. 3d at
537-38.
 We now turn to the merits of the defendants' appeal. The defendants
argue that the trial court erred in granting the plaintiffs' motion to
voluntarily dismiss the case. Section 2-1009(a) of the Code of Civil
Procedure provides:
 "The plaintiff may, at any time before trial or hearing begins,
 upon notice to each party who has appeared or each such party's
 attorney, and upon payment of costs, dismiss his or her action or any
 part thereof as to any defendant, without prejudice, by order entered
 in the cause." 735 ILCS 5/2-1009 (West 1996).
When a party complies with the requirements of section 2-1009, her right to
a dismissal without prejudice is, with very limited exceptions, unfettered.
 Morrison v. Wagner, 191 Ill. 2d 162, 165, 729 N.E.2d 486 (2000).
 We first address the argument, raised by the defendants, that the
plaintiffs were not entitled to a voluntary dismissal as of right because
trial had already commenced. The argument is without merit.
 The Illinois Supreme Court's decision in Kahle v. John Deere Co., 104
Ill. 2d 302, 472 N.E.2d 787 (1984) is instructive. In Kahle, the defendant
argued that the trial court erred in allowing the plaintiff to voluntarily
dismiss her case without prejudice. It asserted that trial had already
begun as, on the day trial was set to begin and before the plaintiff moved
for voluntary dismissal without prejudice, the trial court had spent
several hours ruling on motions in limine. Our supreme court rejected the
argument, noting that motions in limine are not part of the trial. Kahle,
104 Ill. 2d at 307, 309. The court concluded trial had not yet begun where
"no jury had been selected; no prospective jurors had been examined or
sworn; and counsel had made no opening statement." Kahle, 104 Ill. 2d at
309.
 The defendants argue that the instant case is distinguishable from
Kahle in several respects. They point out that the plaintiff in Kahle
moved for voluntary dismissal without prejudice on the date the trial was
set to begin after the trial court had spent only a few hours ruling on pre-
trial motions. In contrast, they assert, the plaintiffs here moved for a
voluntary dismissal without prejudice six weeks after the case was assigned
out for trial and after the court had ruled on more than 100 motions. The
fact, however, that the trial court in the instant case had issued far more
pre-trial rulings than did the trial court in Kahle does not change the
principle, as stated in Kahle, that pre-trial motion practice is not part
of the trial itself. In further support of their assertion that the trial
had begun, the defendants cite to statements made by attorneys for each of
the parties and the trial judge to the effect that the case was "on trial."
 The question of whether a trial or hearing has begun within the meaning of
section 2-1009 of the Code is a legal one. Baird v. Adeli, 214 Ill. App.
3d 47, 52, 573 N.E.2d 279 (1991). The terminology used by the parties and
the trial judge in the instant case is of no import in answering the
question. At the time the plaintiffs moved for voluntary dismissal here,
jury selection had not yet begun. As such, trial had not started.
 The defendants next assert that the plaintiffs waived their right to
seek a voluntary dismissal by virtue of their prior assurances to the court
and parties that they would not do so. Waiver is defined as the "voluntary
relinquishment of a known right, claim or privilege". Vaughn v. Speaker,
126 Ill. 2d 150, 161, 533 N.E.2d 885 (1988).
 On September 10, 1997, when Judge O'Malley informed the parties that
she was considering recusing herself from the case, defense counsel
expressed a belief that the plaintiffs would voluntarily dismiss their
action. Counsel for the plaintiffs responded: "I guarantee that's not
going to happen." On September 23, 1997, Judge O'Connell heard and denied
the plaintiffs' motion to stay the proceedings in the instant case pending
expedited discovery in the chancery action. Judge O'Connell told the
plaintiffs that, if they were unprepared to try the case, they could
voluntarily dismiss it. Plaintiffs' counsel stated: "We're - we're ready.
We're ready for trial." It is upon these comments that the defendants base
their claim that the plaintiffs waived their right to voluntarily dismiss
the case without prejudice. We disagree. On each of the dates in
question, the plaintiffs, through their counsel, indicated that they had no
present intention of voluntarily dismissing their case. There is no
indication, however, that they intended to, or did in fact, relinquish
their statutory right to do so if they should so choose.
 We next address the defendants' argument that the trial court erred
in granting the plaintiffs' motion for a voluntary dismissal without
prejudice because the plaintiffs did not comply with all of the
requirements of section 2-1009 of the Code. Pursuant to section 2-1009,
three requirements must be met in order for a plaintiff to voluntarily
dismiss her case without prejudice as of right: 1) the plaintiff must move
for the voluntary dismissal prior to the beginning of trial or hearing; 2)
the plaintiff must give proper notice; and 3) the plaintiff must pay costs.
 735 ILCS 5/2-1009 (West 1996); Vaughn v. Northwestern Memorial Hospital,
210 Ill. App. 3d 253, 257, 569 N.E.2d 77 (1991). This court has held that
the failure to comply with any of the three requirements can deprive the
plaintiff of her right to voluntarily dismiss her case. See Lewis v.
Collinsville Unit No. 10 School District, 311 Ill. App. 3d 1021, 1027-28,
725 N.E.2d 801 (2000)(reversing grant of motion for voluntary dismissal and
remanding for new hearing on motion where plaintiff had not given proper
notice prior to ex parte hearing); Vaughn, 210 Ill. App. 3d 253; Crawford
v. Schaeffer, 226 Ill. App. 3d 129, 590 N.E.2d 497 (1992) (reversing grant
of motion for voluntary dismissal and remanding for determination as to
whether plaintiff gave requisite notice); contra Metcalfe v. St.
Elizabeth's Hospital, 160 Ill. App. 3d 47, 54, 513 N.E.2d 12 (1987)
(affirming grant of motion for voluntary dismissal absent notice where no
prejudice to defendants).
 It is undisputed that the plaintiffs did not give the defendants the
requisite notice of their motion to voluntarily dismiss the case without
prejudice. They gave, in fact, no notice. Further, the plaintiffs have
not paid the defendants $79,173.14, their share of the costs and expenses
awarded by the trial court. Luna and Joson argue that the plaintiffs were
not entitled to voluntarily dismiss their case without prejudice for this
reason. We cannot agree.
 In Mizell v. Passo, 147 Ill. 2d 420, 428-29, 590 N.E.2d 449 (1992),
our supreme court affirmed the grant of a motion for voluntary dismissal
without prejudice despite the fact that the plaintiff had not given notice
or tendered costs. The court concluded that, where the defendant had been
given a short recess to review the motion and an opportunity to present
argument thereon and the trial court's order granting the voluntary
dismissal required that the plaintiff pay costs, no prejudice had resulted.
 Mizell, 147 Ill. 2d at 428-29. Similarly, the defendants here were given
an opportunity to respond to the plaintiffs' motion despite the lack of
notice, and the trial court's order granting the plaintiffs a voluntary
dismissal without prejudice requires that they pay costs and expenses to
the defendants. We fail to see how the defendants have been prejudiced.
In accordance with Mizell, we decline to reverse the trial court's order
granting the plaintiffs' motion for voluntary dismissal based upon the
plaintiffs' failure to strictly comply with the requirements of section 2-
1009.
 Finally, we address the defendants' argument that the plaintiffs were
not entitled to voluntarily dismiss their case without prejudice because
their motives for doing so were improper. The plaintiffs, they contend,
engaged in forum shopping and dilatory tactics all along, culminating with
their motion for a voluntary dismissal without prejudice after the trial
court made evidentiary rulings not in their favor. Where the plaintiffs
attempt to use section 2-1009 in such a flagrantly abusive manner, the
defendants argue, a court is not required to, and indeed must not, grant a
motion for voluntary dismissal without prejudice. This argument, too,
lacks merit.
 As our supreme court stated recently in Morrison v. Wagner, 191 Ill.
2d 162, 165, 729 N.E.2d 486 (2000):
 "[S]ection 2-1009 of the Code of Civil Procedure, by its terms,
 confers on plaintiffs an unfettered right to voluntarily dismiss their
 claims without prejudice, upon proper notice and payment of costs, 'at
 any time before trial or hearing begins.' That provision, however, is
 subject to two qualifications. First, where a previously filed
 defense motion could result in a final disposition of the cause of
 action if ruled upon favorably by the court, the court has the
 discretion to hear and decide that motion before ruling on the
 plaintiff's motion for voluntary dismissal. 735 ILCS 5/2-1009(b)
 (West 1998). Second, where the circumstances are such that dismissal
 under section 2-1009 would directly conflict with a specific rule of
 this court, the terms of the rule take precedence. Catlett v. Novak,
 116 Ill. 2d 63, 69 (1987); O'Connell v. St. Francis Hospital, 112 Ill.
 2d 273 (1986)."
 In the instant case, there was no potentially dispositive motion
pending at the time the plaintiffs moved for voluntary dismissal without
prejudice.[2] Nor does the plaintiffs' exercise of their right to a
section 2-1009 voluntary dismissal without prejudice conflict with any
supreme court rule. As our supreme court held in Morrison, Rule 219(e)
does not restrict a plaintiff's right to voluntarily dismiss his case
without prejudice pursuant to section 2-1009. Morrison, 191 Ill. 2d at 166-
67. Accordingly, the plaintiffs' right to voluntarily dismiss their case
was absolute, and the trial court properly granted the motion.
 We now turn to the plaintiffs' argument, raised in their cross-
appeal, that the trial court erred in ordering them to pay Luna and Joson
costs and expenses in the amount of $79,173.14.
 The plaintiffs first argue that the trial court erred in assessing
the defendants' litigation expenses as "costs" pursuant to section 2-1009
of the Code, which, they assert, authorizes only an award of court costs.
In support of this contention, the plaintiffs rely on Galowich v. Beech
Aircraft Corp., 92 Ill. 2d 157, 441 N.E.2d 318 (1982), in which our supreme
court held that deposition expenses cannot be taxed as costs pursuant to
section 2-1009. As the plaintiffs acknowledge, after our supreme court
issued its decision in Galowich, it amended Supreme Court Rule 219 by
adding paragraph (e) thereto. Rule 219(e) provides that: "The court may,
in addition to the assessment of costs, require the party voluntarily
dismissing a claim to pay an opposing party or parties reasonable expenses
incurred in defending the action including but not limited to discovery
expenses, opinion witness fees, reproduction costs, travel expenses,
postage, and phone charges." 166 Ill. 2d R. 219(e). The plaintiffs
acknowledge that deposition costs and other expenses can be awarded
pursuant to Rule 219(e) but apparently argue that the trial court awarded
expenses not as a Rule 219(e) "expense" but as a section 2-1009 "cost" in
contravention of Galowich.
 We agree with the plaintiffs that there is a distinction between
section 2-1009 "costs" and Rule 219(e) "expenses." The text of Rule 219(e)
itself states that the "reasonable expenses" for which it provides may be
awarded "in addition to the assessment of costs". 166 Ill. 2d R. 219(e).
It is true that the trial court, in its September 26, 1997, and November
12, 1997, orders provided that the plaintiff was to pay "costs." The
trial court, however, ordered the parties to file briefs on the issue of
Rule 219(e) expenses and stated in its November 12, 1997, order that the
plaintiff had "violated Supreme Court Rule 219(e)." Further, in its April
21, 2000, order, the trial court ordered that the plaintiffs pay "costs and
other expenses in the amount of $117,059.41." Accordingly, the plaintiffs'
argument that the deposition costs and other expenses were assessed
pursuant to section 2-1009 is meritless.
 The plaintiffs also argue that the trial court erred in assessing
Rule 219(e) expenses against them. As stated in the committee comments to
Rule 219, paragraph (e) is designed to address "the use of voluntary
dismissals to avoid compliance with discovery rules or deadlines, or to
avoid the consequences of discovery failures, or orders barring witnesses
or evidence." 166 Ill. 2d R. 219(e), Committee Comments. In Scattered
Corp. v. Midwest Clearing Corp., 299 Ill. App. 3d 653, 659, 702 N.E.2d 167
(1998), this court held that:
 "Based upon the language of Rule 219(e) and illumination from
 the Committee Comments, we find that Rule 219(e)'s reference to
 voluntary dismissals taken to 'avoid compliance' with 'discovery
 deadlines, orders, or applicable rules' (166 Ill. 2d R. 219(e))
 requires the circuit court to make a preliminary finding of
 misconduct, analogous to the 'unreasonable noncompliance' standard
 invoked in Rule 219(c) cases (166 Ill. 2d R. 219(c)), before imposing
 expenses pursuant to Rule 219(e). [Citation]. To determine whether
 the noncompliance is unreasonable, the standard is whether the conduct
 of the noncomplying party shows a deliberate, contumacious or
 unwarranted disregard for the court's authority. [Citation]."
 The plaintiffs contend that they did not voluntarily dismiss this
case to avoid the effect of their own noncompliance with discovery
deadlines or orders but that they did so to correct procedural or technical
defects. In their revised motion for a voluntary dismissal without
prejudice, the plaintiffs asserted that they were dismissing the case
because the trial court had denied their motions to stay the instant case
pending expedited discovery in the chancery action. In their brief, the
plaintiffs assert they exercised their right to a voluntary dismissal not
only because the trial court refused to provide them with a forum to "air
the truth about the Petrillo violations," but also because, during pre-
trial motions, the trial court struck Warner-Lambert Company from the
caption of the case, thus removing a necessary party from the lawsuit.
 Contrary to the plaintiffs' assertion, we do not believe that the
trial judge was bound to accept their proffered reason for voluntarily
dismissing the case. In his November 12, 1997, order, Judge Virgilio
stated in relevant part as follows:
 "The applicability of the rule [Rule 219] to the plaintiff is
 clear. Time and time again, the plaintiff has brought many of the
 same or similar motions before different judges, including but not
 limited to Judge Cox, Judge Zwick, Judge O'Malley, Judge O'Connell and
 this court. The plaintiff even filed an action in the Chancery
 Division in an attempt to correct his perceived 'procedural or
 technical defects.' Only after Judge O'Connell told the plaintiff he
 was on trial and this court reaffirmed the motions in limine and
 barred the video did the plaintiff indicate he would voluntarily
 dismiss the case. *** Only at the last minute, when it was clear that
 certain rulings would not be entered in the plaintiff's favor, did the
 plaintiff decide to seek a dismissal.
 Clearly, the plaintiff has abused section 2-1009 and has
 violated Supreme Court Rule 219(e)."
It is clear from these comments that Judge Virgilio based his assessment of
expenses on his conclusion that the plaintiffs sought the voluntary
dismissal in order to avoid his orders reaffirming Judge O'Malley's pre-
trial rulings, many of which barred the plaintiffs from presenting certain
witnesses or evidence due to untimely disclosure, and barring the
plaintiffs from using at trial the computer animated videotape which they
first disclosed several weeks prior to trial. The record not only amply
supports the trial court's finding in this regard, it dispels any other
possible finding. There is no question that the assessment of expenses
pursuant to Rule 219(e) was proper in the instant case, where the
plaintiffs exercised their right to voluntarily dismiss the action without
prejudice in order to avoid the effects of pre-trial evidentiary rulings
based on their own failure to comply with discovery deadlines.
 The plaintiffs alternatively assert that the trial court's order
assessing Rule 219(e) expenses against them is unconstitutional. The
plaintiffs correctly note that, at the time this case was filed in 1991,
paragraph (e) of Rule 219 was not yet in existence. They assert that, upon
filing the case, they obtained a vested right to dismiss the case without
prejudice upon payment of only section 2-1009 costs. The plaintiffs argue
that paragraph (e) of Rule 219, which became effective on January 1, 1996,
at least as applied to the instant case, constitutes a retroactive law as
it interferes with this vested right. We disagree.
 It is well-settled that the legislature is without constitutional
authority to enact a law that is retroactive in nature (First of America
Trust Co. v. Armstead, 171 Ill. 2d 282, 290, 664 N.E.2d 36 (1996)), and we
do not question the plaintiffs' assertion that the same limitation applies
with respect to supreme court rules. It is also, however, settled that an
amendment is retroactive only if it takes away or impairs a vested right or
imposes a new obligation or duty or attaches a new disability with respect
to transactions already past. Dardeen v. Heartland Manor, Inc., 186 Ill.
2d 291, 295, 710 N.E.2d 827 (1999).
 Our supreme court has defined a vested right alternatively as "an
expectation that is so far perfected that it cannot be taken away by
legislation" and "a complete and unconditional demand or exemption that may
be equated with a property interest." First of America Trust Co., 171 Ill.
2d at 290-91. There is no vested right in the mere continuance of a law.
Envirite Corp. v. Illinois Environmental Protection Agency, 158 Ill. 2d
210, 215, 632 N.E.2d 1035 (1994). We agree with the defendants that the
plaintiffs did not, upon the filing of their case, acquire a vested right
to dismiss their case upon payment of only section 2-1009 costs. As such,
the application of Rule 219(e) to the instant case does not implicate
constitutional concerns.
 In a final attempt to obtain a reversal of the trial court's award of
Rule 219(e) expenses, the plaintiffs remind this court of its duty to act
in the best interests of Daniel, a disabled minor. It has often been
stated that the courts are under a duty to protect the interests of a minor
or disabled person who is a party to judicial proceedings before it. See
Tymony v. Tymony, 331 Ill. 420, 163 N.E. 393 (1995); City of Chicago v.
Board of Education, 277 Ill. App. 3d 250, 260, 660 N.E.2d 74 (1995);
Brandon v. DeBusk, 85 Ill. App. 3d 645, 648, 407 N.E.2d 193 (1980)
(reversing order dismissing minor plaintiff's petition to vacate an order
dismissing his action for failure to comply with discovery and remanding to
circuit court to determine whether any lesser sanctions might be
appropriate). We are mindful of the fact that the Rule 219(e) expenses
awarded must be paid out of Daniel's estate, which, the plaintiffs inform
us, already contains funds woefully inadequate to meet Daniel's extensive
needs. The duty to protect the interests of minors and the disabled does
not, however, lie solely with the courts. In the instant case, Daniel was
represented by guardians of both his person and his estate. During the
course of the proceedings, various of the trial judges presiding over the
case informed the plaintiffs' counsel that the trial tactics they were
employing were questionable. This brought about no noticeable change in
counsel's conduct. The plaintiffs made the decision to seek a voluntary
dismissal with full knowledge of the costs and expenses which could
potentially be assessed. Rule 219(e) provides no exception for cases where
the plaintiff is the estate of a minor or disabled person. See Hoffman v.
Central National Bank in Chicago, 130 Ill. App. 2d 246, 252, 264 N.E.2d 711
(1970)(refusing to excuse guardian of the minor's estate and person from
posting bond for costs). In light of the purpose for which the plaintiffs
exercised their right to voluntarily dismiss this action, we cannot say
that the trial court abused its discretion in assessing Rule 219(e)
expenses.
 The plaintiffs assert that, if we do find that Rule 219(e) is
applicable in the instant case, we must at least remand to the trial court
for a hearing regarding the reasonableness of the expenses and costs
awarded. We disagree.
 On October 21, 1997, the trial court ordered the parties to file
briefs on the issue of Rule 219(e) expenses. During oral argument, counsel
for Luna and Joson asserted that his clients had filed such a petition,
seeking far in excess of the $79,173.14 which the trial court ultimately
awarded them. Counsel has provided us with no record citation for this
petition, and we have been unable to locate the petition in the voluminous
record. The plaintiffs' counsel, however, did not contest the fact that
Luna and Joson filed such a petition. It is unclear to us whether the
trial court heard argument on the issue of Rule 219(e) expenses or took the
issue under advisement on the parties' briefs alone. During oral argument
before this court, counsel for Luna and Joson asserted that the court heard
argument but, once again, we have been provided with no record citation and
have been unable to locate the transcript of any such argument. At any
rate, during oral argument before this court, the plaintiffs' counsel
conceded that the plaintiffs did not, before the trial court, raise
objections to any specific expenses sought by the defendants but, rather,
only objected generally to the assessment of Rule 219(e) expenses.
 The parties have obviously provided us with a less than clear picture
of the procedural steps leading to the entry of Judge Virgilio's November
12, 1997, order, setting forth the amount of Rule 219(e) expenses to be
assessed, which order was later adopted by Judge Zwick and incorporated
into her April 21, 2000, order. We do, however, know that the parties were
given an opportunity to brief the issue and that the plaintiffs made no
objections as to any specific expense or category of expenses sought by the
plaintiffs. We also know that the trial court ultimately awarded the
defendants significantly less than the amount they were seeking. All of
these facts belie the plaintiffs' assertion that the trial court assessed
expenses without inquiring into or allowing the plaintiffs an opportunity
to challenge the reasonableness of those expenses.
 As part of their cross-appeal, the plaintiffs also ask this court to
review various trial court rulings quashing depositions, striking portions
of their complaint, barring certain evidence and testimony, and granting
and denying certain motions in limine. The plaintiffs sought review of
these same interlocutory orders the first time this case was before us. As
we stated at that time, we lack jurisdiction to review the interlocutory
orders in question as none of the orders constituted a procedural step
leading to the trial court's orders granting a voluntary dismissal and
assessing Rule 219(e) expenses. See Valdovinos, 307 Ill. App. 3d at 537-
38; Arangold Corp. v. Zehnder, 187 Ill. 2d 341, 718 N.E.2d 191 (1999);
Hough v. Kalousek, 279 Ill. App. 3d 855, 863-64, 665 N.E.2d 433 (1996);
Saddle Signs, Inc. v. Adrian, 272 Ill. App. 3d 132, 135-40, 650 N.E.2d 245
(1995).
 For the foregoing reasons, we affirm the trial court's orders
granting the plaintiffs' motion to voluntarily dismiss the action without
prejudice pursuant to section 2-1009 of the Code and requiring that the
plaintiffs pay the expenses of Luna and Manalac, in the sum of $79,173.14,
pursuant to Rule 219(e).
 Affirmed.
 HARTMAN and THEIS, JJ., concur.
-----------------------

 [1] Parke Davis also filed notices of appeal docketed in this court
as numbers 1-00-1741 and 1-00-2114, from which the plaintiffs filed notices
of cross-appeal. Those appeals, however, have been dismissed pursuant to a
settlement agreement between the parties.

 [2] After the plaintiffs moved to voluntarily dismiss the action,
Parke Davis filed a motion for summary judgment, in which Luna and Joson
subsequently joined. The trial court, however, declined to rule on the
motion before granting the plaintiffs' motion for a voluntary dismissal.